ROBERTS v. JOHNSON.

1. REPLEVIN.

When a party who has never been in possession of personal property brings replevin therefor, he must show some title, general or special, which gives him the right of possession as against the person who holds it.

2. CHATTEL MORTGAGES—DEEDS OF TRUST.

The provisions of the chattel mortgage act extend to all deeds of trust which have the effect of a mortgage upon personal property.

3. SAME.

Where the instrument provides that the mortgagor may sell the property without obligation to account to the mortgagee for the proceeds of what may be sold, it is invalid as to all existing creditors who are permitted to assert its invalidity as against all but *bona fide* purchasers for a valuable consideration. The reservation of such right, and not the exercise of it, vitiates the transaction *ab initio* as to all the property upon which it was attempted to create a lien.

*Appeal from the District Court of Eagle County.*

THIS case was tried to the district court on a stipulation which admitted the facts to be as stated, to wit:

"*First*—It is hereby agreed and stipulated by and between the parties hereto that the following are the facts material to the issues herein:

"*First*—On or about September 8, 1887, The South Park Land and Cattle Company, a Colorado corporation, filed for record in the office of the county clerk of Fremont county, at Canon City, in said county and state aforesaid, a certain instrument in writing (copy of which is hereto annexed, but

the authority of the company to execute the same and the resolution of it or its board of directors empowering its president or secretary to execute the same is not admitted by the defendant), whereby it conveyed to one T. M. Harding, as trustee, certain chattel property, including the property herein in dispute, to secure the payment of certain bonds of the company (the authority to give which not being admitted), amounting to sixty thousand dollars, due in ten years after September 1, 1887, and bearing interest, payable semiannually on the first day of March and the first day of September in each year; provided, that upon default, either in the payment of the interest on said bonds, or any of it, as in said instrument conditioned, the holder of any of said bonds, there being sixty of them, for one thousand dollars each, might direct the trustee in said instrument or chattel mortgage mentioned, to forthwith sell and dispose of said property, or so much thereof as was necessary to pay said bonds, after giving certain notice of the time and place of the said such sale.

" *Second*—That one George Westlake was, on or about March 1, 1890, the holder of thirteen of said bonds, and the interest due thereon at said date was not paid, nor was it paid at the expiration of ninety days thereafter; upon which said default said Westlake directed said trustee, Harding, to sell and dispose of said property and apply the proceeds agreeably to the terms of said mortgage.

" *Third*—In pursuance of such direction, said trustee proceeded to advertise a sale of said property, according to the provisions of said mortgage, on the 31st day of July, A. D. 1890, to take place at Canon City, Fremont county, Colorado, on the 7th day of October, 1890, which said sale was adjourned until October 17, 1890, at which time the said property was sold by said trustee, Harding; and W. E. Johnson, plaintiff herein, at such said sale became and was the purchaser of said chattel property.

" *Fourth*—On or about August 25, 1890, the said T. M. Harding, as such said trustee, took possession of the home

ranch of said company, located in Park county, Colorado,
and took such possession as he could by taking possession of
the headquarters of said company, of the personal property
included in the said chattel mortgage, the stock therein
described being at large upon the public range. He gathered
none thereof, and did not reduce the same to actual personal
possession. The property herein in dispute was at that time
in Eagle county, and no actual possession was then or ever
taken of it by said Harding, or the plaintiff herein, until after
the commencement of this replevin suit. Also, said Harding,
on or about said August 25th, went to the town of Alma,
Park county, Colorado, and notified Joshua Mulock, general
manager and agent of said company, that he had taken pos-
session of the mortgaged property, as trustee, on account of
the aforesaid default in interest payment on said bonds; to
which statement said Mulock made no reply.

"*Fifth*—The principal office of said company was by its
articles of incorporation declared to be at Canon City, Fre-
mont county, Colorado.

"*Sixth*—The judgment of $6,252.45, beside costs, in the
Park county (Colorado) district court, in favor of one
Chauncey I. Gumaer, and against said South Park Land
and Cattle Company, upon which the execution issued under
which defendant herein justifies his levy, includes a claim of
$5,650.30 assigned to him by said Joshua Mulock, general
manager and agent of said cattle company, which amount
said Mulock claimed to be due him from said company for
moneys advanced to and services rendered for said The South
Park Land and Cattle Company.

"*Seventh*—On September 10, 1890, in the district court
of Park county, Colorado, one Chauncey I. Gumaer began
suit to recover of and from said The South Park Land and
Cattle Company $6,172.94, interest and costs, and at once
caused attachment writs in aid thereof to issue to Park and
Eagle counties against the property of said company therein.
By virtue of such writ to Eagle county, defendant herein,
W. T. Roberts, sheriff of said Eagle county, on or about

September 13, 1890, at said county, and not elsewhere, attached and took possession of said property herein in dispute as the property of and belonging to the said The South Park Land and Cattle Company, the same being found in possession of the said company's agent and having been taken therefrom. Afterwards, and on or about October 28, 1890, said Gumaer in said above action in said Park county district court, recovered, in due form of law, judgment against the said The South Park Land and Cattle Company for the sum of $6,252.45 and costs, and thereupon special execution issued in due form of law upon the aforesaid judgment from the office of the clerk of said Park county district court to defendant herein, as sheriff of said Eagle county, commanding him to sell the stock herein in dispute and theretofore attached by him as aforesaid; and upon defendant proceeding to advertise for sale said property, under said writ, plaintiff herein instituted this replevin suit and took possession of said property from defendant and still retains it. Said judgment is now in full force and wholly unsatisfied. Defendant was, when he served said writ, and yet is, sheriff of said Eagle county.

" *Eighth*—Actual possession of the particular stock in this suit in dispute was never taken by said trustee, or by plaintiff, at any time prior to the commencement of this suit; no demand for a delivery of the same was made by the plaintiff, or by any one for him, upon defendant before commencement of this action.

" *Ninth*—There was and is no record of said mortgage in Eagle county, neither did defendant or judgment creditor Gumaer have actual notice of the existence of said incumbrance.

" *Tenth*—Property is in possession of plaintiff, and returns thereof cannot be had. Its value is $1,200."

The trust deed which is referred to in the stipulation contained the following clauses:

" And also the entire herd of stock cattle and horses belonging to the said party of the first part and consisting of

about seven thousand (7,000) head, branded with the I M on the left hip or side, now ranging in said Park, Chaffee and Fremont counties, Colorado; the said party of the first part, however, reserving the right to sell or dispose of from said herd from time to time all beef and unproductive cattle and horses, but in no event to decrease the herd by any such sale or disposal to a less number than seven thousand." "Provided, always, that until default shall be made in the payment of the principal or interest aforesaid, the party of the first part may remain in the possession of the said premises and property and proceeds thereof."

In the chapter concerning chattel mortgages contained in the Gen. Stats. of 1883 there occurs this quotation:

"The provisions of this act shall be deemed to extend to all such bills of sale, *trust deeds* and other conveyances of personal property, as shall have the effect of a mortgage or lien upon such property."

On this record the court below adjudged the title to be in the purchaser of a chattel mortgage sale and rendered judgment accordingly, and the sheriff prosecutes the appeal.

Mr. CHARLES A. WILKIN, for appellant.

Mr. R. T. McNEAL, for appellee.

BISSELL, P. J., delivered the opinion of the court.

When a party who has never been in possession of personal property brings replevin, he must undoubtedly show some kind of a title, resulting from a general or special property in it, which gives him the right of possession as against the person who holds it. Recognizing the force of this principle, Harding attempted to show his right by proof of the trust deed, the sale under it, and his purchase. There was a claim that what he did at the ranch in Park county when he went to demand the property gave him control of the cattle in Eagle which were taken by the sheriff under

his attachment, and held under an execution at the time this suit was brought.

The first matter to be determined respects the statute which has been quoted. There was contention in the argument that the instrument which is the foundation of Johnson's title was not a chattel mortgage, and did not come, either by its description or its character, within the definition of this class of security. It is likewise insisted that the nature of the property and the character of the bonds secured by the instrument must necessarily take it out of the operation of this act. Whatever force there may be in the suggestion that, because the bonds ran for ten years, and the property could not be preserved intact for that period without a practical destruction of the security, we are not at liberty to consider these matters in the resolution of the inquiry. This would be judicial legislation which nothing short of a public necessity would warrant, and it may be doubted whether any emergency would justify it. There is no analogy between cattle and the rolling stock of a railroad. In the latter case, this sort of property is an integral part of the road, and absolutely essential to its successful operation and maintenance as a railroad. The road itself runs through many counties; the property is in one county to-day and in another to-morrow, and often travels the circuit of the entire state. For these as well as other reasons which will readily occur, this sort of property has never been regarded as coming within the provisions of chattel mortgage acts in states where the question has been raised as to the necessity to observe the provisions of such statutes in the recording of railroad transfers and securities. There is no such practical difficulty with a herd of cattle. The herd can be kept in the limits of the county which is the home of the corporation, the instrument may be recorded in whatever counties the cattle may run, and all statutory limitations can be regarded in the construction of the instrument. The only difficulty springs from the duration of the mortgage. If it runs for ten years, and the mortgagors are compelled to keep the

same identical cattle, this duty would in some measure destroy the value of the security, because the age of the herd would render it practically unsalable. This seems a very substantial impediment when parties desire to issue corporate bonds running for a period of years, and to provide for their payment out of a herd then in the corporate ownership. We cannot, however, on this account legislate on this subject. The statute declares that the provisions of the chattel mortgage act shall extend to all deeds of trust which have the effect of a mortgage upon personal property. That this particular instrument had that effect does not admit of doubt. If the cattle had been dissevered from the ranch, and there had been two instruments executed to secure the bonds,—one a trust deed upon the realty, and the other a chattel mortgage upon the herd,—nobody would have presumed to question the operative force of the mortgage act upon the instrument. That both species of property are included in one deed can make no possible difference when the statute says that if such an instrument is intended to operate as a mortgage or lien upon the property it shall be held to be within its provisions. We are thus driven to the conclusion that, in order to determine the rights of the parties, we must look to the act and its judicial construction, and the instrument which the parties have executed, to settle the controversy.

The mortgage deed is clearly invalid under the act as it has been construed by the supreme court and by this. It will be observed the corporation attempted to mortgage its entire herd, as well as the seven thousand head included in it, which was the limit to which it must always be maintained during the life of the security. It is practically conceded that seven thousand was not the exact number, but there were cattle outside of it, and of necessity there would be more if the herd increased. The parties agreed that the mortgagor should have the right to dispose of both cattle and horses from time to time, as the cattle should reach the stage of beef, or as the horses should become unproductive and useless, and apply the proceeds to their own uses and benefit. Such a provi-

sion has been uniformly held by the courts of this state to be absolutely repugnant to the provisions of the statute, and necessarily void as against attaching creditors.　As this court said, speaking by the writer of this opinion : " By the terms of the attempted contract, the cattle company had the right to use and enjoy the property and dispose of it in the ordinary methods, and it was under no obligation by the provisions of the security to account to the mortgagees for the proceeds of what might be sold.　Such a mortgage has been adjudged invalid as to all existing creditors, who are permitted to assert its invalidity as against any but *bona fide* purchasers for a valuable consideration."　As it was well put by the learned justice of the supreme court who delivered the opinion which first established the law in the state (9 Colo., *infra*), " when the mortgagee stipulates, either in the mortgage or out of it, that the mortgagor may sell the very thing composing his security and retain the proceeds, he thereby destroys every vestige of a valid statutory or common law mortgage, and leaves himself in no better position than if it had not been executed.　Besides, the inevitable tendency of the transaction is disastrous to other creditors of the mortgagor ; for the effect is to hinder and delay such creditors, while the mortgagor makes way with the property, and leaves the general aggregate of his indebtedness undiminished.　Predicated upon these considerations is the view sustained, as we think, by the larger number and the better reasoned cases, viz., that the *existence* of the facts mentioned, whether shown by the mortgage or by evidence *aliunde*, wholly invalidates the transaction as to creditors."

In the *Brasher Case* (10 Colo., *infra*), the court by the learned commissioner, Mr. Macon, held " that the agreement to sell invalidates the mortgage as to creditors and incumbrancers, and this effect takes place at the moment of the delivery of the instrument.　It is not necessary to this effect that any of the property be sold under the power.　The transaction is vitiated *ab initio* as to all the property upon which

it is attempted to create a lien, by the reservation of such right, and not by the exercise of it."

It is thus plain it is the law of this state that a mortgage like that from which Johnson derives his title is invalid as against creditors, and cannot prevail in a contest concerning the property. *Wilson v. Voight*, 9 Colo. 614; *Brasher v. Christophe*, 10 Colo. 284; *Harbison v. Tufts*, 1 Colo. App. 140; *Wile et al. v. Butler et al.*, 4 Colo. App. 154.

If, in our judgment, the present case by its proof was not brought so clearly within the purview of these decisions, we might be called upon to decide some other questions of considerable difficulty which are suggested in the briefs of counsel. Since our conclusion respecting this matter entirely determines the rights of the parties, we do not deem it necessary to consider or decide these other questions.

For the error which the court committed in rendering judgment for the plaintiff, this case must be reversed and remanded.

*Reversed.*