[S. F. No. 1067.   Department One.—April 15, 1899.]

IRA BISHOP, Receiver, et cetera, Appellant, v. ROBERT Mc-KILLICAN, Sheriff, et cetera, et al., Respondents.

MORTGAGE OF STREET RAILROAD—FORECLOSURE—RECEIVER—ATTACHMENT —REPLEVIN.—A receiver appointed to take possession of mortgaged railroad property in an action of foreclosure cannot, without an order of court, maintain an action of replevin to recover the possession of personal property belonging to the railroad company, which was not taken from his possession, but was held by the sheriff under a writ of attachment, and had come into the possession of the receiver only as care-taker for the sheriff.

ID.—MORTGAGE OF PERSONAL PROPERTY—DEFECTIVE EXECUTION.—A mortgage of a street railroad, purporting to cover the personal, as well as the real, property of the railroad company, which is not executed as provided in sections 2950 to 2972 of the Civil Code, concerning mortgages of personal property, but only as a mortgage of real property, is void as to the personal property, as against the attaching creditors of the mortgagor.

ID.—POWER OF RAILROAD CORPORATIONS TO MORTGAGE PROPERTY—MODE OF EXECUTION—CONSTRUCTION OF CODE.—Section 456 of the Civil Code, conferring upon railroad corporations the power to mortgage their property, does not prescribe the mode of execution of such mortgages; but the mode and manner of the execution of mortgages of real and personal property by such corporations is that prescribed by the Civil Code for the execution of such mortgages in general, without exception in favor of any person or corporation.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Edward J. Pringle, for Appellant.

The chattel mortgage act has no application to railroad mortgages upon the road and rolling stock. (Civ. Code, sec. 456; *Union Loan etc. Co. v. Motor R. R. Co.,* 51 Fed. Rep. 851; *Hammock v. Farmers' Land etc. Co.,* 105 U. S. 92; *Cooper v. Corbin,* 105 Ill. 233, 234; *Bement v. Plattsburg etc. R. R. Co.,* 47 Barb. 104; *Scott v. Clinton etc. R. R. Co.,* 6 Biss. 534; *Titus v. Mahee,* 25 Ill. 257.)

Sidney V. Smith, Olney & Olney, and Warren Olney, for Oregon Improvement Co., Respondent.

Section 456 of the Civil Code does not preclude the application of sections 2955-72 to mortgages of the personal property of railroad companies. The mortgage, not having been executed as a chattel mortgage, did not affect the personal property, and it was subject to attachment or execution. (*Hoyle v. Plattsburg M. R. R. Co.,* 54 N. Y. 315; *Simpson v. Ferguson,* 112 Cal. 184; *Williamson v. Railroad Co.,* 29 N. J. Eq. 311; *Small v. National Prov. Bank of England,* 1 Ch. Div. (1894.) 686.) The receiver was not entitled to maintain this action without an order of court, he not having had possession of the property in his own right. (*Tibbets v. Cohn,* 116 Cal. 365; Am. & Eng. Ency. of Law, tit. "Receivers," 229; High on Receivers, sec. 201; *Yeager v. Wallace,* 44 Pa. St. 294; *Patrick v. Eells,* 30 Kan. 680; *Fichten Kamm v. Gambs,* 68 Mo. 289.)

Reed & Nusbaumer, for Robert McKillican, Sheriff, Respondent.

Fitzgerald & Abbott, for Daniel Dwyer, Respondent.

VAN DYKE, J.—In 1890 the Consolidated Piedmont Cable Company, a corporation operating a street railroad in Oakland, executed a mortgage to the California Title Insurance and Trust Company, by its terms including all track and tracks, together with all depot grounds, buildings, machinery, workshops, dummies, cars, rolling stock of all kinds, full equipments, tools, fixtures, and other property, which is now or may hereafter, in whole or in part, be constructed, completed, purchased, acquired,

held, or owned by the mortgagor, pertaining to the said railroads, and all the corporate rights, privileges, and franchises of the mortgagor pertaining to said roads, or any of them. This mortgage was acknowledged and recorded as a real estate mortgage, and contained no affidavit, nor was it recorded as required by the Civil Code in reference to chattel mortgages. Afterward, it is claimed by appellants, the railroad company acquired certain rolling stock, two bundles of wire cable, some old iron and office furniture. On the first day of November, 1893, the Oregon Improvement Company, a creditor of the railroad company, brought suit against said railroad company and caused an attachment to be issued therein. Under this writ of attachment, and on the same day, to wit, the 1st of November, 1893, McKillican, as sheriff of Alameda county, by virtue of said writ of attachment, levied upon and seized the personal property last above mentioned.

On the same day, to wit, November 1st, in an action brought by the California Title Insurance and Trust Company, a corporation, against the said Consolidated Piedmont Cable Company to foreclose said mortgage, the plaintiff herein was appointed receiver, with "authority to continue the business of the Consolidated Piedmont Cable Company, and as incident thereto to create such indebtedness as may be necessary in conducting said business, and with the powers incident to the office of receiver."

On the trial of this action in the court below it was stipulated that certain allegations in the answer were true, and that the property described in the complaint herein was held by the defendant McKillican, as sheriff of the county of Alameda, under an attachment issued against the Consolidated Piedmont Cable Company at the suit of the defendant herein, the Oregon Improvement Company, and the further following stipulation is entered into between the parties:

"OREGON IMPROVEMENT COMPANY,

                       Plaintiff,

             v.

"CONSOLIDATED PIEDMONT CABLE
    COMPANY,

                     Defendant.

"Whereas, in the action now pending in the above-entitled court, wherein the California Title Insurance and Trust Company is plaintiff and the above-named defendant is also defendant, the undersigned has been appointed receiver of the property and assets of the above-named defendant and has taken charge of all the property of the defendant, except such as was in possession of Robert McKillican, sheriff of Alameda county, under and by virtue of a writ of attachment levied in the above-entitled action;

"And, whereas, the undersigned has taken possession of all the property of the defendant, but subject to the above-mentioned levy, and it is the intention of the California Title Insurance and Trust Company, the plaintiff in the action wherein the undersigned was appointed receiver, to test the validity of the prior attachment levied in the above-entitled action; and it is desirable that the property belonging to the said defendant be used by the receiver, subject to any lien which the above-named plaintiff may, by virtue of the levy under said writ of attachment, have; and it is also desirable that expense be saved in caring for the said property:

"Now, therefore, I, the undersigned, receiver as aforesaid, do hereby acknowledge that I have received possession from the said Robert McKillican, sheriff as aforesaid, as caretaker for him, of the personal property levied upon by him under the writ of attachment in the above-entitled action, and I do hereby agree to restore the same to the possession of the said Robert McKillican, sheriff, whenever he shall demand of me so to do.

"But this receipt shall not prejudice any claim which I, as receiver, may make, that said levy of a writ of attachment is inferior in right to any claim as receiver.

"Dated Oakland, November 1, 1893.

    "(Signed)                               IRA BISHOP.

"To Robert McKillican, Sheriff:

"If Ira Bishop, receiver, et cetera, will sign the foregoing receipt you are at liberty to appoint him caretaker of the property levied upon by you, and the plaintiff will acquit you of any claim for damages arising from any act of his.

"Dated November 1, 1893.     "SIDNEY V. SMITH and
                             "WARREN OLNEY,

"Attorneys for Oregon Improvement Company."

And after the execution of the stipulation the property up to the time of levy of execution was used or held under and in pursuance to the terms of the stipulation.

From the facts, as appears in the record, the plaintiff never had possession of the articles sued for as receiver, or in any other way, except as the servant of the defendant McKillican, as sheriff, whereas the action seems to be based upon the theory that the property was in the possession of the plaintiff as receiver, and unlawfully and wrongfully taken from his possession by the defendants. As to this property, the possession of the receiver was never disturbed or interfered with. The facts, therefore, are not consistent with the plaintiff's theory of his cause of action. The only authority the receiver has for bringing this action is the order appointing him. That does not specially authorize him to bring a suit for the recovery or value of property withheld or converted of which he never was in possession. Beach on Receivers, sections 672, 673, says: "It has been formally adjudicated that a receiver, who has had possession of property by virtue of his appointment as such receiver by a competent court, may maintain an action of detinue for the property. Although such an action could not be maintained if grounded merely upon the right of property which may be claimed to vest in him by virtue of his appointment, yet, as a mere right of possession, is a sufficient basis upon which to found the action, and as he is entitled to the possession, he may avail himself of this remedy. A receiver appointed in supplementary proceedings takes only an equitable right of redemption in chattels mortgaged by the judgment debtor when reduced to possession by the mortgagee before the commencement of the proceedings, and he cannot maintain replevin for such chattels against the mortgagee. In a recent case in England it was held

that the receiver of a pawnbroker's business was not entitled to the possession of redeemable pledges as against the sheriff who held them by virtue of a levy under execution made after the appointment of the receiver, but before he had perfected his security." In *State v. Gambs*, 68 Mo. 289, it is held that an action brought by a receiver could not be maintained because he had received no special authority entitling him to bring suit; Judge Henry adding: "A suit by a receiver to recover property of which he had obtained possession, but which has been taken from him, rests upon a different ground. In such a case his formal possession created a special property which would support the action." In *Tibbets v. Cohn*, 116 Cal. 365, this court says: "As a rule, however, the receiver cannot sue to recover property which has not come to his possession, or which, being in the possession of the defendant, ought to have been delivered by him. He cannot maintain trover for property of the insolvent converted before the adjudication, nor to recover property transferred by the debtor in fraud of creditors. His appointment is intended to have the effect of a preliminary injunction to preserve the property. It does not appear that there was any order of the court directing or authorizing the suit."

Beach on Receivers, section 650, says: "The receiver has no right to sue except by leave of the court which appointed him. Out of the established doctrine that a receiver is the officer of the court—('the hand') by which it executes its will in regard to the property in its keeping—is deduced the well-nigh universal rule that a receiver may not bring any suit without having first obtained leave of court." And since the appeal was taken in this case, in the action of *California Title etc. Co. v. Consolidated Piedmont Cable Co.*, 117 Cal. 237, it was held that moneys due the Piedmont Cable Company did not pass to the possession of the receiver by virtue of his appointment as such, and that the same were subject to and were attached by Albert S. Black, a creditor of said Piedmont company. The court say: "The mortgage did not cover the assets of the corporation due therein beyond the property as hereinbefore stated, and the receiver was appointed, not to collect the debts due the corporation defendant, but only to take possession of the mortgaged property, operate the road, et cetera. When, therefore, he took posses-

sion of the money of the defendant and collected money due to
it before his appointment, which was not covered by the lien
of the mortgage, he transcended his authority as receiver." Un-
der the order appointing the plaintiff as receiver he had no
power to bring suits for the recovery of property, or to contest
the right of property claimed to belong to the defendant corpora-
tion in the suit wherein he was appointed, which would or might
involve risk or expensive litigation, without an order of the
court to that effect.

The property in question in this action is personal and not
real estate. The mode and manner of mortgaging chattels or
personal property is pointed out in the Civil Code, sections 2950-
72. By section 2957 it is declared: "A mortgage of personal
property is void as against creditors of the mortgagor and sub-
sequent purchasers and encumbrancers of the property in good
faith and for value, unless: 1. It is accompanied by the affidavit
of all the parties thereto that it is made in good faith and with-
out any design to hinder, delay, or defraud creditors; 2. It is
acknowledged or proved, certified and recorded in like manner
as grants of real property."

As already stated, the mortgage in question did not purport
to be executed in pursuance of the requirements of the code
concerning chattel mortgages, but only as a mortgage of real
property. The first section of the chattel mortgage provision
specifies what articles of personal property may be mortgaged,
and the first subdivision includes "locomotives, engines, and
other rolling stock of a railroad"; the ninth, "growing crops."
*Simpson v. Ferguson,* 112 Cal. 180, 53 Am. St. Rep. 201, was a
case of a mortgage of growing crops. In that case a real estate
mortgage had been executed, covering the land upon which the
crops were grown, subsequent to the execution of the mortgage.
The court say: "It is urged that sections 2950 and following of
the Civil Code, providing for the manner of mortgaging grow-
ing crops, do not establish an exclusive method; that as this
class of property may, under some conditions, be regarded as
realty, and under other conditions as personalty, it must follow
that under corresponding conditions the property may be the
subject of a real estate mortgage or a chattel mortgage, ac-
cording to the circumstances; and that plaintiff having a valid

mortgage upon the land, with its rents, issues and profits, this gives him a valid lien upon the growing crops, as effectually, to the same extent for all purposes, as if executed with the formalities required in the case of a crop mortgage.  We are unable to coincide in this view.  In the first place, we think it quite manifest from the provisions of the code in question that the legislature intended thereby to provide an exclusive mode for the mortgaging of growing crops, and intended to declare that for such purpose this species of property shall be regarded as chattels.  There is nothing in the statute to indicate that it was not intended to cover every case of a mortgage given upon that class of property."  Therefore, it was held the mortgage did not vest the mortgagee with a right to the crops grown intermediate the giving of the mortgage and the foreclosure thereof.  If this be "an exclusive mode for mortgaging growing crops," it is likewise as to the property in question here, as it belongs to the same category and included in the same section.  In *Southern Cal. etc. Road Co. v. Union Loan etc. Co.*, 64 Fed. Rep. 450, the circuit court of appeals, in modifying the opinion of the circuit court, held that a mortgage by a railroad company, under the authority conferred upon such companies by section 456 of the Civil Code, included personal property as well as real estate, although executed and recorded as a real estate mortgage merely.  The court, in deciding the case, say: "There is a great diversity of opinion upon this question in the different states where no express statute exists upon the subject. . . . . Several states, owing to the conflict in the decisions of the courts, have settled the matter by direct legislation. . . . . The Civil Code of California, in dealing with the subject of railroads and of corporate stock, provides that railroad corporations, for the purpose of constructing and completing roads, may, among other things, mortgage their corporate property and franchises. . . . . There are no conditions attached to this power.  It is absolute, and gives the railroad the right to mortgage personal as well as real property for the purpose mentioned, without encumbering it with any of the conditions attached to the chattel mortgage act."  The same circuit court of appeals subsequently, in *Illinois Trust etc. Bank v. Seattle R. R. Co.*, 82 Fed. Rep. 941, had under consideration

the same subject matter of mortgaging chattels by a railroad company under the laws of the state of Washington. In that case the court held that the failure of the trust deed to comply with the chattel mortgage law of that state rendered the mortgage void as to the personal property. The statutes of that state contain provisions for mortgaging personal property or chattels similar to ours. The court, in deciding the case, say: "This court held that a statute of California relating to chattel mortgages similar to that of Washington did not apply where the mortgage of a railroad company covers personal property in connection with real estate and corporate franchises; but in both of these cases the exception was based upon the provisions of the statute conferring upon railroad corporations organized or incorporated under the laws of the state for public purposes the power to mortgage their franchises and real and personal property as an entirety."

Section 456 of the Civil Code is found in division I, part IX, title III, under the head of "Railroad Corporations." It is simply intended, as its language imports, to confer upon railroad corporations the power to mortgage their property. Being a corporation and the creature of law, it would possess no such power without direct authority given to it by law. The section does not in terms, however, as implied in the decision of the circuit court of appeals, confer power to mortgage "their franchises and real and personal property as an entirety," but simply confers the power to mortgage such property without prescribing the mode. The same power is possessed by individuals. Still, it would hardly be claimed that an individual, owning a railroad and all the other property that ordinary railroad corporations own, could mortgage the whole property, real, personal and franchises, in one instrument as a real estate mortgage. (See, also, *Hoyle v. Plattsburg etc. R. R. Co.*, 54 N. Y. 314; 13 Am. Rep. 595.)

The mode and manner of executing mortgages, both of real and personal property, will be found in altogether a different part of the Civil Code from that concerning corporations, to wit, under division III, part IV, title XIV. In article II the mode of mortgaging real property is pointed out from section 2947 to section 2952, inclusive, and mortgages of personal property in

article III, from sections 2955 to 2973, both inclusive, and it is declared in section 2957 that "a mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless" executed, acknowledged, and recorded as in that article prescribed. No exception is contained in favor of any person, whether a natural person or a corporation, and the language is too plain to be misunderstood and requires no construction. It is intimated in the opinion of the circuit court of appeals referred to, that, if a state by statute has "settled the matter by direct legislation," the court would feel bound to follow it. We think that our state has settled the matter in the provisions of the code referred to, and that it is the duty of this court to follow the law as there laid down.

The judgment and order denying a new trial are affirmed.

Harrison, J., and Garoutte, J., concurred.