[No. 7720]

## Booth, Trustee, et al. v. Central Savings Bank, Trustee.

1. Fixtures—*No Universal Test Of.* There is no universal test by which it can be absolutely determined whether a particular article is a fixture. A thing should be regarded as real or personal property, according to the intention of the owner, its relation to, and its connection in use with, the freehold, rather than from the manner in which connection with the freehold is accomplished. (520, 521)

It is not necessary that the thing should be actually attached to the land to make it a part thereof. (527, 528)

2. ——*Rolling Stock of a Railway,* and other like property, is generally regarded as a fixture, though in exceptional cases it may be treated as personalty. (521)

3. ——*Mortgage of Railway—Carriers Rolling Stock.* Where the law permits a railway company to mortgage its franchises and property as an entirety, a mortgage thereof in conformity with the statute governing mortgages of real estate, and duly recorded, creates a valid lien, though the statutes regulating chattel mortgages, and the creation of liens upon chattel property are disregarded. (527)

Sec. 110 of the General Laws subdiv. 7 (Rev. Stat. 5411,) construed in connection with the provisions of sec. 62, p. 138 of Rev. Stat. 1868 and sec. 5523, 5524, 5768, 5769, 5771 of Rev. Stat. 1908, grants to such corporations the power to mortgage the corporate property as an entirety. (530, 531)

*Error to Denver District Court.*—Hon. Hubert L. Shattuck, Judge.

Mr. Edmund J. Churchill, Mr. Gerald Hughes, Mr. Barnwell S. Stuart, Mr. E. E. Whitted, Mr. Arthur Ponsford, Mr. Everett Owen, Mr. W. H. Ferguson, Mr. Wm. E. Hutton, for plaintiffs in error.

Mr. Halsted L. Ritter, Mr. S. E. Marshall, for defendant in error.

Mr. Justice White delivered the opinion of the court:

The sole question to determine herein is, which of the contending parties has a superior lien upon "the rolling stock of The Argentine Central Railway Company," a Colorado railway corporation.

The defendant in error claims such lien by virtue of a mortgage deed in which it is named as trustee, given by The Argentine Central Railway Company upon its property as an entirety to secure its long term bonds, in the aggregate sum of $200,000 and recorded February 6, 1906. The plaintiffs in error, except the sheriff, who is interested in his official capacity only, are subsequent judgment creditors of the railway company, and claim liens by virtue of executions issued upon their respective judgments, and placed in the hands of the sheriff in June, 1911. Thereafter in a proceeding to foreclose the mortgage security for the payment of such bonds, the aforesaid judgment creditors of the railway company were made defendants and the question here involved arose.

It is claimed by defendant in error, in behalf of the bondholders, that the mortgage, which covered the real estate belonging to the railway company, as well as the rolling stock and other property of like character, was valid and binding upon both classes of property, though it was treated as a real estate mortgage only and the provisions of the Chattel Mortgage Act, Chap. 23, R. S. 1908, were not observed. Plaintiffs in error, on the other hand claim that the inclusion of the rolling stock and property of like character was of no effect, as the non-observance of the chattel mortgage act makes the lien, so attempted to be created thereon, void as against creditors of the mortgagor.

There is no universal test whereby the character of

what is claimed to be a fixture can be absolutely determined, and the question whether the rolling stock of a railroad company is real estate or personal property when its status is not affected by statute, is not satisfactorily answered by the authorities. In a note to *Webster Lum. Co. v. Keystone L. & M. Co.*, 66 L. R. A. 1, 49, it is said that the Federal courts rather incline to regard it a fixture, while the trend of the decisions of the state courts is to regard it personal property.

We think the principle recognized and applied by the highest court of the land is, that where there is no statutory inhibition the class of property in question should generally be treated as a fixture, or permanent accession to the real estate, forming part of the road entity, though in exceptional cases it may be treated as personal property; and, further, where the laws permit a railroad company to mortgage its franchises and property as an entirety, and it does so execute a mortgage thereon, in conformity with the laws governing real estate mortgages, and the same is duly recorded, that thereby a valid lien is created, and the transaction is of necessity relieved from the operation of statutes concerning personal property, and the creation of liens thereon. Thus in *Hammock v. Loan & Trust Co.*, 105 U. S. 77, 26 L. Ed. 1111, the validity of a railroad mortgage which purported to cover the franchise, real estate and rolling stock of an Illinois railroad was involved. The contention was made that as the constitution of the state declared the rolling stock of railroad companies to be personal property, and subject to execution as such, and the mortgage in question not being executed and recorded as a chattel mortgage, it was invalid as to such property. The court, however, held that the constitutional provision in itself did not determine the fact that such rolling stock could only be mortgaged as personal property as that provision

constituted only a partial modification of the *general rule* that the property of a railroad corporation used for necessary corporate purposes can not be seized and sold under an execution at law; and that where the laws of a state "permitted a railroad company to mortgage its franchises and property as an entirety" it might lawfully include such rolling stock and personal property as a part of the franchises and real estate of the corporation, and a mortgage so covering such property, executed in conformity with the law governing real estate mortgages only, created a valid lien thereon superior to the lien arising from a subsequent levy by execution upon such movable property.

It would seem upon a careful consideration of *Minnesota Co. v. St. Paul Co.*, 2 Wall 609, that the court had previously recognized the same principle. Such also has been the holding of other courts in language quite convincing. Thus in *Palmer v. Forbes et al.*, 23 Ill. 301, 312, it is said:

"Where the charter, or a general law of the State, authorizes a railroad company to mortgage either its real or personal estate, and provides no mode of execution or recording, and specifies no form for the instrument, and declares no effect which it shall have upon the rights of the parties or others, it would seem to follow, necessarily, that such mortgages must be subject to and governed by the general laws of the State, regulating mortgages; at least, so far as the general laws are applicable to the subject matter of the mortgage. As our laws applicable to mortgages of real and personal estate differ, the necessity of determining what is personal and what real estate is imposed upon us.

That the railroad itself, including the ground and superstructure, as well as the depot grounds, buildings and turntables, and the like, are real estate, no doubt has

ever been expressed, but it is denied that the rolling stock and other property, capable of being removed from the road without breaking the soil or leaving a trace of the removal, is to be treated as a part of the road itself, and pertaining to the real estate.

We are of opinion that the rolling stock, rails, ties, chairs, spikes, and all other material brought upon the ground of the company incumbered by the mortgage, and designed to be attached to the realty, should be considered as a part of the realty, and incumbered by the mortgage as such; but fuel, oil, and the like, which are designed for consumption in the use, and which may be sold and carried away, and used as well for other purposes as in the operation of the road, and when taken away have no distinguishing marks to show, that they were designed for railroad uses, cannot, we think, with any propriety, be treated or considered as anything but personal property, and subject to, and governed by the law applicable to such property. Indeed, it is hardly to be supposed, that it was the understanding of the parties, that personal property, designed for immediate consumption, was ever intended to be embraced in the mortgage, except such as might be on hand at the time the mortgagees or trustees should foreclose or take possession under the mortgage. So long as the mortgagors should retain possession of and operate the road, all knew and intended that such property could never in any event be sold, or in any way appropriated to the satisfaction of the debt, by the trustee. All knew, that the process of consumption and fresh supplies of such property must be ever going on, and that it could never be touched by the trustees, except what might happen to be on hand at the moment possession should be taken. To say that a mortgage, which upon its face provides for its maturity twenty years hence, was designed to embrace and hold

the fuel and oil which all knew and intended should be consumed to-morrow, if not absurd, is a refinement beyond that practical common sense which we are capable of comprehending. As a practical truth, we cannot for a moment believe that such was the honest purpose or intention of either party. Indeed, such an intention could have been entertained by either party, only for the purpose of protecting the property from the creditors of the company for its benefit, that it might consume and use it, and not that it might be appropriated by the law or by the trustees in the payment of the bonds. But property,—designed for permanent use, and which was expected would continue permanently in the use of the road, or if worn out gradually, would be as gradually replaced, so that practically the same thing continued,— it was the undoubted design of both parties, should be embraced in the mortgage, and ultimately appropriated to the payment of the debt.

We are not departing from the common law rule, when we hold that the rolling stock and material provided for the repair of the track, are a part of the real estate. It is not necessary in all cases that things should be actually affixed to the freehold, in order to constitute a part of it for the purpose of transfer and sale. Take the case of mill stones, which are constantly being taken up and sharpened; when up, they are as much a part of the mill as when in their beds, and would pass by a deed or mortgage of the mill, if they had been, in fact, detached for six months. So of various kinds of machinery, as a screw or cutting engine, or lathe, where a great multitude of different sized pinions or cutters are kept on hand, but only one of which can be used at a time. All of these are necessary to make the complete machine, and would pass by a sale of the factory as being a part of it, but with no more propriety than is the rolling

stock a part of the railroad. No road can be complete without its machinery, any more than would a cotton or a grist mill. Would not the sale of a foundry, as such, convey the flasks and moulds within it? Yet who would contend that the coal on hand would pass by such a description, or that a mortgage of a foundry and the stock on hand, would protect the coal which the mortgagor was actually putting into the furnace, from an execution against him, or prevent him from selling it to his neighbor, and converting a good title? Money is property, and by the terms of the mortgage, was embraced within it, but we cannot presume that it was the intention of the parties that the money on hand, and which both parties expected and intended should be immediately paid out and expended in the operation of the road by the mortgagor, was subject to the lien of the mortgage, and that no person knowing of the existence of the mortgage, could receive it of the company, without making himself liable to the mortgagees. We venture to say that no one expected or intended that any such right was secured to the mortgagee by the mortgage. Nor do we want analogies in the well settled principles of the common law, to hold that materials provided and designed to be attached to the road, are, for the purposes of a mortgage or a conveyance, a part of the real estate itself. It is a familiar principle to all, that rails hauled on to the land, designed to be laid into a fence, or timber for a building, although not yet raised, but lying around loose, and in no way attached to the soil, are treated as a part of the realty and pass with the land, as appurtenances. By applying these familiar principles of the common law, we may be enabled to determine what we should consider as appurtenant to the freehold, and what should pass by a conveyance of the road, and consequently what is covered by and embraced within a mortgage encumbering the road,

acknowledged and recorded as a mortgage of real estate."—*Cooper et al. v. Corbin et al.*, 105 Ill. 224, 233, is to the same effect. We quote therefrom as follows:

"But it is said the deeds of trust did not create a valid lien on the personal property, as they were not acknowledged as required by the act in regard to chattel mortgages. We do not think the act in regard to chattel mortgages has any bearing whatever on mortgages or deeds of trust of the character of those under consideration. * * * The railroad company in this case had express authority under its charter, to mortgage all of its property, both real and personal, as an entirety. The fact that the mortgage embraced the franchise, the real and personal property, did not impair its validity. It was enough that the legislature had conferred the power on the company, and that the power had been executed in the manner acquired by the charter. When the mortgage was executed, acknowledged, and placed upon record, it became a lien upon all of the property of every description it contained. * * *."

In *Bishop v. McKillican*, 124 Calif. 321, 329, 57 Pac. 76; 71 Am. St. 68, the court, in declining to follow the decision in *Southern Cal. etc. Co. v. Union Loan & Trust Co.*, 64 Fed. 450, 12 C. C. A. 215, endeavored to make a distinction as to the effect of a mortgage deed covering the class of property here under consideration, executed under a statute which in express terms authorized the corporation to mortgage its franchises and real and personal property "as an entirety," and those executed under statutes conferring like power but without the words "as an entirety." We think no such distinction exists. On the contrary, *Hammock v. Loan & Trust Co.*, *supra*, clearly shows that if there is no inhibition against mortgaging the property as an entirety, and the power to mortgage all its property is conferred upon a railroad

corporation, it is invested with the former power. And in *Cooper v. Corbin, supra,* the statute is set forth and contains, in the granting of the power to mortgage the property of the railroad company for the purposes aforesaid, only general terms. Nevertheless, it is therein said that "the railroad company in this case had express authority, under its charter, to mortgage all of its property, both real and personal, as an entirety." Moreover, the decision in *Bishop v. McKillican, supra,* is not based upon the alleged distinction in the statutes but is really based upon the peculiar language of the chattel mortgage act of that state, the first section of which specifies what articles of personal property may be mortgaged thereunder, which includes "locomotives, engines and other rolling stock of railroads." While another subdivision of the same section includes "growing crops;" and it having been held that the chattel mortgage act was "an exclusive mode for mortgaging growing crops," it was likewise exclusive as to the other property designated therein. So, under and within the terms of the chattel mortgage statute of the State of Washington, rolling stock of a railroad company is personal property for the purposes of such statute, and the cases arising in that state are not in point.

However, without regard to these decisions, we are satisfied that upon principle the doctrine declared by the Supreme Court of the United States as hereinbefore stated is correct. This conclusion seems inevitable when we consider the character and nature of fixtures and the purpose and object of railroads and the nature of the property in question. It is firmly established law that a thing should be regarded as real or personal property according to its relation to, and connection in use with, the freehold, together with the intention of its owner, rather than from the manner in which that connection may be ac-

complished, and actual fastening to the freehold is not necessary to make a thing a part of such estate. Thus in *Hardware Co. v. McCarthy,* 10 Colo. App. 200, 219, 221, 50 Pac. 744, "matte pots," used on a track at a smelter for carrying matte from forehearths, and ore cars used for hauling slag, were classed as fixtures incident to the real estate. As to the matte pots, it is said: "They were very heavy, weighing several tons each and were attached to the furnaces, but could be detached and moved, being on wheels, and there being a track for them to run on." And in speaking of the matte pots and ore cars, it is said: "Each of these articles was necessary and essential to the successful operation of the smelting plant for the purposes for which it was intended. Each was a component part of the whole. The forehearth was necessary for receiving and separating the matte and slag, the matte pot for removing them and the cars for hauling the slag." And, again, in the same opinion, after stating the former rule controlling the question in deciding on which side of the line of division between personal and real property an article belonged, and that the rigid rule formerly prevailing had been modified, the court said: "Now it is not absolutely necessary that in order to constitute a fixture, so as to take an article from without the line of personal property, it should be permanently affixed to the freehold by the physical attachment. This may or may not be the case. * * * If it constitutes a part of a plant of machinery necessary to the successful operation of the whole, or if its use is essential to the operation of some part of the machinery, which is physically attached to the freehold, then it may in many cases be properly termed a fixture, even though it wholly lacks a permanent physical attachment to the realty."

The same principle is recognized in *Roseville A. M.*

*Co. v. Iowa G. M. Co.,* 15 Colo. 29, 31, 24 Pac. 920, 22 Am.
St. 373, in which is cited the Illinois case, *Palmer v.
Forbes, supra,* which, as we have seen, holds that "rolling stock," etc., of a railroad should generally be considered as a part of the realty. Now, a railroad company
is created by law to build, equip and operate a railroad.
This is its sole purpose and the rolling stock is as essential thereto as the roadbed, ties and rails. Under
these circumstances, coupled with the fact that the railroad company included such property in its real estate
mortgage, it is reasonable to presume that the company
in the instant case intended the rolling stock to be used
only for the road, that is, to become a permanent accession to, or fixture of, its real estate.

In *Roberts v. Johnson,* 5 Colo. App. 406, 39 Pac. 596,
it is expressly declared that rolling stock of a railroad
company is an integral part of the road and absolutely
essential to its successful operation and maintenance as
a railroad, and does not come within the provisions of
chattel mortgage acts as to the necessity of observing
the provisions of such statutes in the recording of railroad transfers and securities. While the character of
such property was not involved therein and the language
is, therefore, *obiter,* the declaration is quite persuasive,
and as applied to the facts of this case is correct.

However, should it be conceded, as contended, that
in the absence of statutory declaration or intent the
property of a railroad company of the nature of rolling
stock, is, by the weight of authority, personal property,
the statutes of this state, we think when fairly considered, class it generally as real estate. The power to
mortgage its property given a railroad company by the
laws of this state has always been, by virtue of a special
grant as distinguished from the power invested in corporations generally. It appears that in 1867, § 62, p. 138

R. S. 1868, railroad companies were given the specific power to mortgage their property, and their rolling stock declared for such purpose to be realty. That act expressly enumerated the property which might be so mortgaged, that is, the road of the company, its depots, depotgrounds, rolling stock and such other property or lands of which it may be lawfully possessed. Thereafter the phraseology of the section was changed and in the General Laws of Colorado, § 110, p. 181, 7th sub.; § 5411, R. S. 1908, the specific properties of a railroad company which may be mortgaged are not enumerated but the power is therein given "to mortgage its corporate property and franchise to secure the payment of any debt contracted by such corporation for the purposes" enumerated, "and in such manner as the shareholders representing a majority of the stock of such corporation may direct." We think the power is here clearly granted to mortgage the corporate property as an entirety. All the power which the stockholders had under the former act is contained in the latter, which was the act in force when the mortgage in question was executed. The former act contained a specific declaration that rolling stock should be considered realty in a railroad mortgage. In the latter act the power to mortgage the corporate property is specifically given coupled with the further declaration that it may be done in such manner as the shareholders representing a majority of the stock may direct. In other words, the power to mortgage its corporate property is essentially the power to mortgage all its property as an entirety unless by some statute a valid mortgage can not be executed thereon covering such entire property. Now, as we have seen, the legislative judgment in the prior act, was that rolling stock should be considered real estate, and in the latter act, by granting the power to mortgage its corporate property in such

manner as the stockholders might determine, clearly invests the power to include in such mortgage the rolling stock as realty.

Moreover, § 5523 R. S. 1908, provides for contracts whereby the vendor of railroad equipment may preserve title in himself until payment for such equipment is made and thus prevent the same from being covered by superior mortgage liens. § 5524 regulates leasing of such equipment, also provides for conditional sale thereof and prevents title thereto from passing to lessee or vendee until the purchase money shall have been paid in full. § 5525 provides for execution of contracts in reference to matters covered in the two preceding sections. It requires, *inter alia,* that such contracts be acknowledged by the vendee or lessees before some officer authorized by law to take acknowledgments of deeds, and to be recorded in the office of the secretary of state, and in the office of the recorder of each of the counties in which the railroad may be operated in this state, while § 5527 requires that such contracts "may be acknowledged in the form required as to conveyances of real estate." Are not these provisions significant, and pregnant with meaning as to the legislative understanding of the proper classification of such property? They carefully provide a means whereby the vendee may not become invested with the title to the property until the vendor has received payment therefor. This is essential, it would seem, for without such provisions the combining of ownership of such peculiar class of property, of particular use, in the person owning the real estate upon which such property is used and designed to constitute a complete entity or plant, would ordinarily render each and every part of the plant inseparable from the other and class the entire thing as real estate. This legislative understanding is further evidenced by the requirement that the acknowledgments

of such contracts be before some officer authorized by law to take acknowledgments of deeds in the form required as to conveyances of real estate.

Furthermore, the revenue laws of the state treat such property of a railroad as a part of the integral unit, except under peculiar circumstances. Thus § 5768 provides that if taxes shall become delinquent upon the property of any railway, telegraph or telephone company, express company, fast freight company, palace car or sleeping car company, etc., the county treasurer of the county in which such taxes shall be delinquent shall distrain, and may sell any of the personal property of such corporation wherever found in the manner as other personal property is to be distrained and sold for the nonpayment of taxes. Here is authority to sell all personal property of such corporations, but the sections immediately following exclude rolling stock of railroad companies as personal property except under certain conditions. Thus § 5769 limits the rolling stock of railway corporations, that may be distrained and sold as personal property, to that which is *"found elsewhere than upon the railways of such corporation respectively;"* and further provides, that if by such distrainment and sale of the personal property the whole tax is not realized, the railway shall be sold *en masse* as one property. While § 5770 declares that the rolling stock of every railroad corporation, not previously distrained and sold pursuant to the provisions hereof, wherever such stock may be and whether within or without the state, shall be deemed and taken to be parcel of the railway and shall pass with the railway to the purchaser thereof at any such sale. That such is the correct view, as to the policy of the state with reference to rolling stock of a railroad, is not weakened by § 5771. On the contrary, the correctness of such view is rather confirmed thereby. The section provides,

substantially, that express companies, sleeping car companies, fast freight companies, etc., shall be deemed personal property. It is a matter of common knowledge that such companies own only the cars, and operate them by agreement over the tracks of railroad companies. Under such facts the only property they own is personalty. There is no union of ownership of real estate and personal property of character and peculiar use therewith, essential to make of the personalty, a fixture of the real estate.

The decision of the trial court denied the claims of the judgment creditors and sustained the validity of the mortgage lien, and is, therefore, affirmed.

*Judgment affirmed.*

Decision *en banc.*