THOMAS COOPER *et al.*

*v.*

AUSTIN CORBIN *et al.*

*Filed at Springfield Sept. 28, 1882—Rehearing denied January Term, 1883.*

1. FORMER ADJUDICATION—*whether a bar to subsequent suit or defence.* Where a matter has been once litigated, and a judgment or decree rendered, in a court of competent jurisdiction, the judgment or decree must be regarded as final between the parties to the litigation, and those who claim under them after the rendering thereof.

2. Where a receiver of a railroad company, appointed and acting under the direction of the circuit court of the United States, in 1877 filed a bill in the circuit court of Peoria county to enjoin the collection of the taxes levied upon the capital stock of the company for the years 1873, 1874 and 1875, which, on a hearing, was dismissed, it was *held,* that the decree in such case was no bar to another bill filed by the purchasers of the railroad and its property, under a deed of trust, and whose title was acquired long after the filing of the first bill, to enjoin the collection of the same taxes by the sale of the rolling stock of the railroad company after its purchase, such purchasers not claiming under the receiver, for the reasons that neither the parties nor the subject matter are the same. The latter bill presented the question that the purchasers acquired the property, by their purchase, free and clear of the taxes, which was not litigated in the former suit.

3. TAXATION—*capital stock of a corporation—to be taxed as personal property.* Capital stock of a corporation is personal property, being in its very nature changeable and transitory, and having no element to liken it to real estate. For the purpose of taxation it stands in the place of shares of capital stock, and when the latter is taxed the former is exempt; and shares of capital stock have always been regarded as personal property, in the same manner as promissory notes and bonds.

4. SAME—*as to the lien of a personal property tax—when it attaches.* Taxes on personal property are not a lien or charge upon any specific property until the tax books are delivered to the collector. After such delivery of the tax books, the collector may levy on any personal property found in the hands of the person against whom the taxes have been assessed; but this levy will be subject to any incumbrance on the property created prior to the time he received the books. So a tax on the capital stock of a railroad company, being a tax on personal property, is subject to this rule.

5. SAME—*lien for taxes upon real estate.* Taxes upon real estate, however, are a lien or charge upon the land itself, from and after the first day of May in each year they are levied, and if not paid, the land may be sold for

their payment, and the title will pass regardless of .any incumbrances resting thereon, whether such incumbrances are created before or after the lien has so attached.

6. PURCHASER—*of his rights as against subsequent liens.* Where a railroad company, under authority of law, executes a mortgage or deed of trust upon all its property, both real and personal, including its franchise, and the same is duly recorded in the several counties through which the road runs, a purchaser of such property under a valid foreclosure of the mortgage, will take the same free of all subsequent liens and incumbrances. The title of the purchaser, for the purpose of cutting off all intervening liens, will relate back to the date of the record of the mortgage.

7. SAME—*when purchaser on foreclosure takes property free from taxes.* Where, at the time the taxes assessed upon the capital stock of a railroad company become a lien on its property, a prior lien has been created upon the same by the execution and recording of a valid mortgage thereon, the tax lien will attach only on the company's equity of redemption, and when that equity is cut off by a foreclosure and sale under the mortgage, the purchaser will take the property free from any lien for such taxes, and a court of equity will enjoin a sale of the rolling stock of such company for the payment of the taxes.

8. RAILROADS—*new company by consolidation possesses all the powers of the companies consolidated.* Where a railroad corporation of this State is consolidated with a similar corporation of another State, in conformity with the laws of this State, the new company so created will be clothed with all the rights, privileges and powers conferred by the laws of this State upon the old corporation of this State.

9. MORTGAGE—*of railroad property, real and personal—acknowledgment not governed by the Chattel Mortgage act.* A mortgage or deed of trust by a railroad corporation, embracing all its real and personal property, with its franchise, made in pursuance of express authority in its charter, and recorded in each county through which the road passes, will create a valid and binding lien on its personal as well as its real property, notwithstanding it has not been acknowledged in accordance with the requirements of the Chattel Mortgage act. That act has no bearing whatever upon, and was never intended to apply to, railroad mortgages.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

Messrs. B. S. PRETTYMAN & SONS, for the appellants:

Under the facts, this cause is *res judicata.* The former decree is conclusive upon the parties to that suit, and privies. *Cromwell* v. *County of Sack,* 94 U. S. 351; *Cole* v. *Favorite,*

15—105 ILL.

69 Ill. 457; *Hicks* v. *Chapin*, 67 id. 375; *Harvey* v. *Ward*, 49 Cal. 124; *Ogden* v. *Larrabee*, 70 Ill. 510; *Rising* v. *Carr*, 70 id. 596; *Tuttle* v. *Garrett*, 74 id. 444; *Stout* v. *Lye*, 103 U. S. 67.

The tax was a lien on all the personal property in question, and a purchaser at a mortgage sale took it subject to all liens of record, and is chargeable with notice thereof. *Strong* v. *Allen*, 44 Ill. 428.

This is chattel property, and a chattel mortgage not executed as required by law, where possession is left with the mortgagor, is void. Const. of 1870, art. 11, sec. 10; *Davis* v. *Ransom*, 18 Ill. 396; *Porter* v. *Dement*, 35 id. 478; *Sage* v. *Browning*, 51 id. 217.

The sale of the property under a decree of the United States Court did not divest the State of its lien for taxes, although no levy had been made prior to such sale. The lien for a personal property tax extends to all the personal property of the tax debtor. 1 Am. & Eng. Railway Cases, 402; *Atlantic and Richmond A. L. W. Co.* v. *State*, 63 Ga. 483; *Binkert* v. *Wabash Ry. Co.* 98 Ill. 205; Rev. Stat. chap. 120, secs. 161, 254; *Dennis* v. *Maynard*, 15 Ill. 481.

The lien of the collector's warrant continues against all the personal property of the tax debtor from the date of its reception by the collector until the tax is paid, and purchasers of such property must see that the tax has been paid. Rev. Stat. "Revenue," sec. 254; *Hill* v. *Figley*, 23 Ill. 421; *Binkert* v. *Wabash Ry. Co.* 98 id. 205.

Mr. JAMES McCARTNEY, Attorney General, and Mr. E. S. SMITH, also for the appellants:

The fact of property being incumbered at or before the time of levying a tax, does not give a mortgagee a lien superior and prior to the lien for taxes. *Dunlap* v. *Gallatin County*, 15 Ill. 7; *Dennis* v. *Maynard*, id. 477; *Almy* v. *Hunt*, 48 id. 45; *Binkert* v. *Wabash Ry. Co.* 98 id. 205.

The taxes, and not the warrant, make the lien. In that view the warrant is wholly immaterial. *Almy* v. *Hunt*, 48 Ill. 45; *Union Trust Co.* v. *Weber*, 96 id. 346.

Mr. JOHN M. HAMILTON, Mr. C. W. FAIRBANKS, Mr. J. H. ROWELL, and Mr. GEORGE W. GERE, for the appellees:

The decree in the suit by the receiver of the railroad company is no bar to this suit, there being no identity of parties or of the issues in the two cases. *Town of Lyons* v. *Cooledge*, 89 Ill. 529; *Yeates* v. *Briggs*, 95 id. 79; *Gaar, Scott & Co.* v. *Hurd*, 92 id. 315; *Garrick* v. *Chamberlain et al.* 97 id. 623.

Equity will assume jurisdiction to enjoin the collection of a tax in all cases where the tax has been levied without authority of law, or where the property is not subject to taxation. *Kimball* v. *Merchants' S. L. & T. Co.* 89 Ill. 611; *Binkert* v. *Wabash Ry. Co.* 98 id. 205; *Dickey* v. *Reed*, 78 id. 261; *McConkey* v. *Smith*, 73 id. 313; *Deming* v. *James*, 72 id. 78; *Chicago, Burlington and Quincy R. R. Co.* v. *Cole*, 75 id. 591.

The Chattel Mortgage act is not applicable to mortgages given by railroad companies. *Palmer* v. *Forbes*, 23 Ill. 301; *Titus* v. *Mabee*, 25 id. 257; *Titus* v. *Ginheimer*, 27 id. 462.

When the tax warrant came to the hands of the collector of Tazewell county, we were in possession of the property by the receiver, and whether the property was properly mortgaged or not, our possession gave us the prior lien. The possession of a receiver is that of the trustee for persons entitled under final decree. High on Receivers, secs. 134, 162.

A tax warrant is not a specific lien against the particular property on which personal taxes are assessed, but a lien in general upon property owned by the tax debtor. *Gaar, Scott & Co.* v. *Hurd*, 92 Ill. 330; Burroughs on Taxation, 269.

Capital stock of a corporation, for taxation, taking the place of shares of capital stock, like it is personal property. *D. B. & T. Co.* v. *Parks*, 88 Ill. 170; *Ottawa Glass Co.* v. *McCaleb*, 81 id. 556; *Belleville Nail Co.* v. *People ex rel.* 98

id. 399; *Maur* v. *L. P. and B. R. R. Co.* 27 id. 77; *Binkert* v. *Wabash Ry. Co.* 98 id. 208.

The assessment of a tax against one for a chattel he owns at the time, creates a debt against him, but no lien against the chattel; and if, after such assessment, and before the tax warrant comes into the collector's hands, the tax debtor, in good faith, sells or mortgages the same, the purchaser or mortgagee will be protected from the tax. *Gaar, Scott & Co.* v. *Hurd, supra.*

The tax sought to be collected is not a lien on the real estate purchased by us under the decree of foreclosure. *Schœffer* v. *People,* 60 Ill. 182; *Belleville Nail Co.* v. *People ex rel.* 98 id. 401. See, also, Burroughs on Taxation, 270, 258, 271; Cooley on Taxation, 303; *Atlantic and Pacific R. R. Co.* v. *Cleino,* 2 Dillon, 181; *Price* v. *Powell,* 44 Mo. 436; *Hime* v. *Commissioners,* 19 Wall. 655; *Kirkwood* v. *Magill,* 6 Kan. 510; *Anderson* v. *State,* 23 Miss. 459; *Harrington* v. *Hilliard,* 2 Mich. 271; 38 Pa. St. 339.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill to enjoin the collection of taxes assessed on the capital stock of the Indianapolis, Bloomington and Western Railway Company, for the years 1873, 1874 and 1875. On the hearing, a decree was rendered in favor of the complainants, as prayed for in the bill, and the collectors of Tazewell and De Witt counties appealed.

It appears that George B. Wright, receiver of the Indianapolis, Bloomington and Western Railway Company, in 1877 filed a bill in the circuit court of Peoria county to enjoin the collection of taxes involved in this proceeding. The circuit court, on the hearing, dissolved the injunction and dismissed the bill, and the decree, on appeal to this court, was affirmed. Appellants contend that the decree so rendered is a bar to this action,—that the doctrine of *res judicata* applies.

One great object of the law is, to settle questions and put an end to disputes between parties; and hence, where a matter has once been litigated, and a judgment rendered, in a court of competent jurisdiction, the judgment must be regarded as final between the parties to the litigation, and those who claim under them after the rendition of the judgment. But this rule of law can not be invoked here, because the appellees, who brought this bill, were not parties to the former action, nor do they claim under the receiver, who was a party. Wright, who brought the former bill, was acting under the direction of the United States Court, which had appointed him receiver. He had no right or title whatever to the property. He was a mere custodian under the order of a court. Appellees acquired title to the property, as purchasers under a deed of trust, long after Wright had filed the bill, and they claim that by the purchase they obtained title to the property free and clear of the taxes which appellants are now attempting to enforce against it. This question was not litigated in the former suit. It had not arisen when the former judgment was rendered. We are therefore of opinion that the former judgment can not be relied upon as a bar to this action, for two reasons: First, the parties were not the same; second, the subject matter of the litigation was not the same.

The questions here involved are not free from difficulty, and in order to determine the rights of the parties it will be necessary to consider, first, the nature and extent of appellants' claim; and second, the nature, character and scope of the mortgages under which appellees predicate a right to a priority of lien.

As stated heretofore, the taxes involved were assessed for the years 1873, 1874 and 1875, on the capital stock of the Indianapolis, Bloomington and Western Railway Company, and it is stipulated in the record that all taxes other than taxes upon the capital stock had been fully paid previous to

the commencement of this suit. In August, 1878, the collector of taxes in and for the county of Tazewell levied upon the rolling stock of the Indianapolis, Bloomington and Western Railway Company, which was then in the hands of a receiver, for the purpose of collecting the taxes above specified. There is no ground for the position that the tax in question became a lien upon the real estate of the company from and after the first day of May of each year that it was levied, for the reason that the tax levied was a personal property tax, and not a tax on real estate. Capital stock has never, so far as we know, been treated as real property. It is in its very nature changeable, transitory, and has no element whatever which likens it to real property. In taxation, under the statute, it stands in the place of shares of capital stock, and when the latter is taxed the former is exempt; and shares of capital stock have always been regarded as personal property, in the same manner as promissory notes or bonds. *Belleville Nail Co.* v. *The People,* 98 Ill. 399, is a case in point. In that case the question arose whether a tax of this character was a real estate tax, and it was said: "It is sufficient to say that the capital stock and franchise of a corporation are recognized by the statute as to be listed, valued and taxed as personal property. Rev. Stat. 1874, chap. 120, secs. 3, 4, 7, 34." Again, section 34 of the Revenue law, cited *supra,* in express terms declares, that "every person owning or using a franchise granted by any law of this State, shall, in addition to his other property, list the same as personal property, giving the total value thereof."

If, then, the tax in question was a personal property tax, when did such tax become a lien on the property of the Indianapolis, Bloomington and Western Railway Company? This question has been settled by a number of decisions of this court, to the effect that no lien is created until the tax books are placed in the hands of the collector. (*Shæffer* v.

*The People,* 60 Ill. 179; *Gaar, Scott & Co.* v. *Hurd,* 92 id. 315; *Belleville Nail Co.* v. *The People,* 98 id. 399.) Indeed, the statute itself seems to settle the question beyond dispute. Section 254 declares: "The taxes assessed upon personal property shall be a lien upon the personal property of the person assessed, from and after the time the books are received by the collector." This, of course, means that no lien is created until the books are received by the collector. Section 183 points out the steps to be taken when it is desired to charge the tax on personal property against real estate; but as it is not claimed in this case that the real estate of the company became liable for the tax under that section of the statute, it will not become necessary to consume time in the discussion of that question.

As no lien, therefore, was created until 1878, when the tax books came into the hands of the collector, we will next inquire whether, at that time, the property levied upon was liable to be taken for those taxes.

The Indianapolis, Bloomington and Western Railway Company was formed July 12, 1869, by the consolidation of the Indianapolis, Crawfordsville and Danville Railroad Company, a corporation created under the laws of Indiana, and the Danville, Bloomington and Pekin Railroad Company, a corporation organized under the laws of this State. The consolidation was effected in conformity to the charter of the last named company and the laws of this State, and the new corporation, by virtue of the consolidation, became clothed with all the rights, privileges and powers which had been conferred by the laws of the State upon the Danville, Urbana, Bloomington and Pekin Railroad Company. Prior to the consolidation, and on the 1st day of April, 1869, the Danville, Urbana, Bloomington and Pekin Railroad Company, under and in pursuance to the power and authority of its charter, in order to raise money needed for corporate purposes, issued $2,000,000 of mortgage bonds, and secured the payment of

the same by a deed of trust, or mortgage, on all its franchises and property of every description, both real and personal. This mortgage was recorded in all the counties through which the railroad ran. After the consolidation had been made, the new corporation,—the Indianapolis, Bloomington and Western Railway Company,—on October 1, 1869, concluded to issue its bonds for $5,000,000, and to secure the same executed and recorded in all the counties through which the road ran, a deed of trust on all its property and franchises. The company, however, only issued $3,000,000 of the last named bonds. These two trust deeds were in terms made first liens on all the property, of every description, of the companies. In October, 1874, default was made in the payment of interest on both the mortgages, and no interest was paid after that date. In November, 1874, the holders of the bonds commenced proceedings in Montgomery county, Indiana, and De Witt county, Illinois, to foreclose the mortgages. The Farmers' Loan and Trust Company, the trustee named in the two mortgages, filed cross-bills, in which they prayed for a sale of all the property named and described in the mortgages. Subsequently the suits were removed to the circuit courts of the United States for the Southern District of Illinois, and the district of Indiana, where decrees were rendered directing the sale of all the property described in the mortgages, in satisfaction of the bonded indebtedness. On the 30th day of October, 1878, under and by virtue of the decree, the master in chancery sold to appellees all the property of the Indianapolis, Bloomington and Western Railway Company, for the sum of $1,000,000, which sale was confirmed by the court, and a deed made and delivered in pursuance of the sale.

It will be observed that by the terms of the charter of the Danville, Urbana, Bloomington and Pekin Railroad Company, it had express authority, "from time to time, to borrow such sum or sums of money as may be necessary for the complet-

ing, equipping, operating and maintaining their said railroad, and to issue and dispose of bonds, * * * and to mortgage their corporate property and franchises, or convey the same by deed of trust, to secure the payment of any debt contracted by said company for the purposes aforesaid." (Private Laws of 1867, vol. 2, page 758.) Here was ample authority to execute the deeds of trust, and if they were valid and effectual, the sale under the foreclosure decree would operate to pass the title to the property free and clear of all subsequent liens.

But it is said the deeds of trust did not create a valid lien on the personal property, as they were not acknowledged as required by the act in regard to chattel mortgages. We do not think the act in regard to chattel mortgages has any bearing whatever on mortgages or deeds of trust of the character of those under consideration. The Chattel Mortgage act was never intended to apply to such property as is named in the two mortgages. The Chattel Mortgage act requires a chattel mortgage to be acknowledged in the township in which the mortgagor resides. In what township should a railroad company acknowledge a chattel mortgage? As an example, take the Illinois Central Railroad Company, running from Cairo to Galena. Should it desire to execute a chattel mortgage in conformity to the act in regard to chattel mortgages, which one of the various townships through which its line extends should it select? It no more resides in one township through which its line passes than another, and surely the legislature never intended to require an acknowledgment to be made in every township through which the road passes.

Again, the mortgages given by railroad companies are not usually due in less than twenty or thirty years; and yet, if they are controlled by the Chattel Mortgage act they can not run longer than two years. The validity of a chattel mortgage being limited to two years, it must necessarily follow, if

railroad companies were required to conform to the act, the right to borrow money on long time, to construct or equip a road, and secure it by a mortgage on its property, would in effect be taken away. The Chattel Mortgage act was passed many years ago. We find it in the revision of 1845. When it became the law of the State, railroad mortgages were unknown in this State, and the reasonable inference is, that it was never intended to have any application to a species of property which then had no existence, but which has grown up since its passage, but was intended to apply to chattels that were owned, possessed and used as they were at that time in use among the people in their pursuits of life. See *Peoria and Springfield R. R. Co.* v. *Thompson*, 103 Ill. 187.

The railroad company in this case had express authority, under its charter, to mortgage all of its property, both real and personal, as an entirety. The fact that the mortgage embraced the franchise, the real and personal property, did not impair its validity. It was enough that the legislature had conferred the power on the company, and that the power had been executed in the manner required by the charter. When the mortgage was executed, acknowledged, and placed upon record, it became a lien upon all the property, of every description, it contained, and when the mortgage was subsequently foreclosed, and the property sold, the title of the purchasers, for the purpose of cutting off subsequent liens, would relate back to the date of record of the mortgage.

From what has been said, it follows that at the time the taxes in question became a lien on the property of the railroad company, that lien could only reach the interest the railroad company then had in the property, which was but an equity of redemption, and as that equity was cut off by foreclosure and sale to appellees, the circuit court could do no less than enjoin the collectors from selling the property. Had the tax in question been a real estate tax, a different

rule would prevail. Taxes levied upon real estate become a charge upon the land itself, and if they are not paid, the land may be sold for the taxes due thereon, and the title will pass regardless of any incumbrance resting on the land. Taxes on personal property rest on a different principle,—they are not a charge on any specific property. When the tax books pass into the hands of a collector, he can levy on any personal property found in the hands of the person against whom the taxes have been assessed, but his levy will be subject to any incumbrance on the property created prior to the time he received the tax books.

The decree of the circuit court must be affirmed.

*Decree affirmed.*


Mr. Justice Walker: I am unable to concur in either the reasoning or conclusion in this case. I hold that the lien for taxes is superior to all others, and can not be cut off by other liens, whether prior or junior to the lien for taxes.

Again, this opinion is opposed to the cases of *Hunt* v. *Bullock*, 23 Ill. 320, *Gregg* v. *Sanford*, 24 id. 17, and *Titus* v. *Mabee*, 25 id. 257. These cases I regard as conclusive that the portion of the trust deed relating to the personal property was void for want of a proper acknowledgment. The rolling stock, etc., is made personal property, with all its incidents, by our present constitution, and it must be governed by the rules governing all kinds of chattels. The mortgage on this property should have been acknowledged as other chattel mortgages.