JOHN LAMBERT *et al.* Appellants, *vs.* ELLIOTT R. GIFFIN *et al.* Appellees.

*Opinion filed December 17, 1912—Rehearing denied Feb. 5, 1913.*

1. EMINENT DOMAIN—*compensation cannot be measured by the value of land to the petitioner.* In a proceeding to condemn land as a site for a public institution it is error to give an instruction authorizing the jury, in determining the fair cash market value of the land, to take into consideration its adaptability as a site for a public institution, where there is no evidence tending to show its adaptability for such purpose except in so far as the allegations of the petition are considered. (*Sanitary District* v. *Loughran,* 169 Ill. 362, and *Concordia Cemetery Ass'n* v. *M. & N. W. R. R. Co.* 121 id. 199, distinguished.)

2. SAME—*when instruction is improper as authorizing jury to pass upon competency of evidence.* Where the court has admitted evidence of recent sales of lands in the vicinity of that condemned, an instruction authorizing the jury to disregard such evidence entirely if they believe that the lands sold were so dissimilar to that condemned as to furnish no criterion of value of the latter is improper, as virtually authorizing the jury to pass upon the competency of such evidence.

3. SAME—*jury should find value of land as a whole and make division among the various defendants.* Where it becomes necessary for the jury to assess damages for separate interests in the land condemned, it is the duty of the jury to first fix the fair cash market value of the entire property as between the petitioner and all the defendants, and then to divide the same according to the respective rights of the defendants.

4. SAME—*when instruction as to determining compensation of owner is improper.* In a condemnation case, where there is no dispute as to the value of the leasehold interests, it is improper to give an instruction requiring the jury, in ascertaining the just compensation of the owner of the land, to allow him the fair cash market value of the reversion of the land at the time of the filing of the petition and add thereto the amount of rent he would have received from the land for the unexpired term of the leases.

5. SAME—*when refusal to permit witness to testify that a sale was voluntary is not error.* Where a witness in a condemnation case has testified to all the circumstances attending a sale of other land, which show plainly that the sale was voluntary, it is not error to refuse to allow him to testify that it was a voluntary sale.

6. SAME—*when testimony by the owner of land as to his inquiries in looking for another farm is harmless.* Permitting the land owner to testify that he had made inquiry in the neighborhood with a view to purchasing another farm and had taken the result of those inquiries into consideration in fixing the value of the land condemned is not harmful to the petitioner, even though it may show that the witness considered an improper element, as the petitioner's course, in such case, should be to move to exclude the evidence of the witness as to the value of his land.

APPEAL from the Circuit Court of Will county; the Hon. CHARLES B. CAMPBELL, Judge, presiding.

EDWARD CORLETT, and GEORGE J. CLARE, for appellants.

SNAPP & HEISE, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

Acting under authority conferred by an act of the legislature of this State entitled "An act creating a commission and providing for the acquisition of land for the re-location of the Illinois State penitentiary and the Illinois asylum for insane criminals, and for the building of a new Illinois State penitentiary and a new Illinois asylum for insane criminals at or near the city of Joliet, and making an appropriation therefor," approved June 5, 1907, in force July 1, 1907, (Laws of 1907, p. 45,) appellants, as the penitentiary commission created by said act, for the use of the People of the State of Illinois, on August 30, 1911, filed a petition in the circuit court of Will county to acquire by condemnation 382.79 acres of land for a part of the site which they were by said act directed to acquire for the new penitentiary and asylum for insane criminals near the city of Joliet. Elliott R. Giffin, one of the appellees, owned the land, and Grant P. Giffin and Gilbert V. Giffin, the other appellees, each held 160 acres thereof under leases which expire March 1, 1914. The witnesses for the appellants fixed the value of the 382.79 acres at

amounts ranging from $150 to $186 per acre, while the
witnesses for the appellees fixed the value of the land at
amounts ranging from $270 to $300 per acre. The jury
viewed the premises and returned a verdict awarding to
Elliott R. Giffin $101,669, and to Grant P. Giffin and Gil-
bert V. Giffin each $640, as compensation for their re-
spective interests in the land. After overruling a motion
for a new trial and a motion in arrest of judgment the
court rendered judgment upon the verdict, from which
judgment appellants have appealed to this court and as-
sign various grounds for reversal.

The land in question is located about two miles west
of the village of Lockport and between five and six miles
north-west of the city of Joliet. It has been used as a
grain and stock farm for many years, and the evidence
does not show that it is adapted for any other purpose.
The east 80 acres of the tract was purchased by appellee
Elliott R. Giffin in January, 1909, at the price of $110 per
acre, and the 160-acre tract, just north of and adjoining
this 80-acre tract but not constituting a part of the farm
in question, had been sold for $165 per acre less than a
year before the petition was filed in this case. These were
the only sales shown to have been made in that locality in
recent years.

The eighth instruction given at the request of appellees
was as follows:

"The court instructs the jury that the defendant El-
liott R. Giffin is entitled to the full, fair, cash market value
of his property on the 30th day of August, 1911, regard-
less of the cause which gave them value at that time, for
any use for which the property was then adapted, and if
the jury believe, from the evidence, including their view of
the premises, that said property, in view of its situation
and surroundings, was adapted to form part of a site or
location of a public institution, and you further believe,
from the evidence and your view of the premises, that its

adaptability as a portion of a site for a public institution did, on the 30th day of August, 1911, enter into its fair cash market value, still the said Elliott R. Giffin is entitled to said fair cash market value as of said date."

There was no evidence tending to show that this land was adapted to form part of a site or location for any public institution except in so far as the allegations of the petition are considered, the petition having alleged that the lands in question are a part of a suitable site selected by the commission for the Illinois State penitentiary. The jury must therefore have understood this instruction to mean that the amount to be awarded the land owner as just compensation should be determined by the value of the tract in question to the State for a part of the site for the re-location of the Illinois State penitentiary. This is not the proper measure of compensation, and the giving of the instruction in this case was necessarily prejudicial to the petitioners. In Lewis on Eminent Domain (2d ed. sec. 478,) it is said: "The damages cannot be measured by the value of the property to the party condemning it nor by its need of the particular property." This rule was recognized and followed in *DeBuol* v. *Freeport and Mississippi River Railway Co.* 111 Ill. 499, and *Ligare* v. *Chicago, Madison and Northern Railroad Co.* 166 id. 249.

Appellees rely chiefly upon *Sanitary District* v. *Loughran,* 160 Ill. 362, as authority for the giving of this instruction. In that case the Sanitary District of Chicago was seeking to condemn real estate for the right of way of its canal. An instruction was given to the effect that if the jury believed, from the evidence, that the value of the property on the day the petition was filed was owing, in whole or in part, to the projection of the work upon the drainage canal, the owner was entitled to the fair, cash, market value of the property as it then stood. In discussing this instruction we held that the land owner was entitled to recover the market value of his property as of

the date of the filing of the petition, even though the land had been enhanced in value at that time by reason of the fact that the drainage canal was to be constructed. The same doctrine was laid down in the earlier case of *Concordia Cemetery Ass'n* v. *Minnesota and Northwestern Railroad Co.* 121 Ill. 199, where it was held that the taking and damaging are, in theory, done as of the date of the filing of the petition, and it is the value of the property as then presumably enhanced by the prospective benefits to result from the construction of the railroad which the owner is entitled to recover. The doctrine laid down in those two cases is quite different from that announced in this instruction. The doctrine announced in the two cases cited is based upon the theory that if the proposed work in constructing the canal and in building the railroad benefited all the lands in the vicinity, then the owner of the land sought to be taken for the bed of the canal or the right of way of the railroad was entitled to the benefit of such increase. This instruction is not based upon any such theory. The evidence does not disclose that this farm is adapted to form the site or location of any public institution except the one in contemplation. There is no claim that the re-location of the penitentiary on this site has affected or will affect the market value of any lands in that vicinity. This instruction plainly indicates that appellees may take advantage of the necessities of appellants. Such is not the law. It was error to give this instruction.

The fifth instruction given on behalf of appellees is as follows:

"The court instructs the jury that evidence of other sales should only be considered by them so far as a similarity exists between the lands sold at other times and the lands of the defendants, and if you believe, from your view of the farm of Elliott R. Giffin and the evidence of the witnesses, that the character and condition of the Jackson farm or the Dieter farm at the time they were sold

were not similar to the Giffin farm, and were so dissimilar to the Giffin farm on August 30, 1911, that such sales furnish no criterion of the value of the Giffin farm, then you are at liberty to disregard the evidence of such sales entirely in fixing the just compensation to which the defendants in this case are entitled."

Evidence of voluntary sales of other lands in the vicinity of and similarly situated to the land sought to be condemned is admissible to aid in determining the value of such tract. The value of such testimony depends upon the similarity of the land to that in question at the time such sales were made and the distance such lands are located from those sought to be condemned. Whether such other lands have sufficient similarity that evidence of the sales would aid the jury, must, of necessity, rest largely in the discretion of the trial judge. (*St. Louis and Illinois Belt Railway* v. *Guswelle*, 236 Ill. 214; *Aledo Terminal Railway Co.* v. *Butler*, 246 id. 406.) The court having passed upon the competency of this evidence and having admitted it, it was only within the province of the jury to consider it and give it such weight as they believed it to be entitled to. This instruction virtually authorized the jury to pass upon the competency of the evidence and should have been refused.

The ninth instruction given on behalf of appellees is as follows:

"The jury are instructed that it is your duty to allow E. R. Giffin, the owner of the land being condemned, just compensation therefor, and that just compensation means such a sum of money as will make him as well off after taking his property as he would have been if his property had not been condemned. In ascertaining such just compensation the jury should allow him the fair cash market value August 30, 1911, of the reversion in the land condemned, and add thereto the amount of rent that he would

receive from such land for the two years ending March 1, 1914."

This instruction should not have been given. It was no concern of appellants what proportion of the total damages awarded should be allowed to Elliott R. Giffin and what portion should be allowed to his two sons, as tenants. Where it becomes necessary for the jury to assess damages for separate interests in condemnation proceedings, it is the duty of the jury to first fix the fair cash market value of the entire property as between the petitioner and all the defendants, and then to divide the same according to the respective rights of the defendants. (*Chicago, Burlington and Quincy Railroad Co.* v. *Reisch & Bros.* 247 Ill. 350; *Chicago and Northwestern Railway Co.* v. *Miller,* 251 id. 58.) In this case there was no disagreement among the appellees as to the value of the leasehold interests of the two tenants. It was conceded by Elliott R. Giffin that the leasehold interest of each of his sons was worth the sum of $640. Under this state of the record it was only incumbent upon the jury to determine the full cash market value of the property. The division of the amount so found among the appellees could then have been made by the court as well as by the jury. This instruction was improper and should have been refused.

The appellants complain of the giving of instructions Nos. 4 and 7 on behalf of appellees and of the refusal of their instruction No. 16. A consideration of these instructions discloses that Nos. 4 and 7 were properly given and No. 16 properly refused.

The sale of a farm known as the Jackson farm was testified to, and William Grinton, a witness for appellants, was not permitted to testify that this was a voluntary sale, and appellants complain of the exclusion of this testimony. The witness testified in detail to all the circumstances, which showed plainly that it was a voluntary sale. The questions to which objections were sustained called for the

conclusions of the witness, and the court properly sustained the objections.

Elliott R. Giffin was permitted, over the objection of appellants, to testify that he had made inquiry in the neighborhood in which he had lived, and other neighborhoods around the city of Joliet, with a view of purchasing a farm, and that he had taken the results of those inquiries into consideration in fixing the value of his farm. He had previously testified that the fair cash market value of his farm was $300 per acre. Appellants insist that the evidence in regard to the inquiries made was improperly admitted, for the reason that the price which various persons who may not have been desirous of selling their lands had fixed upon them did not tend to disclose the market value of lands in that vicinity. We do not perceive how the admission of this testimony was prejudicial to appellants. It may be conceded that it was not proper, but if it had any effect at all, it must have been to weaken the testimony of Giffin as to the value he placed upon his farm. Had appellants desired to take advantage of the fact that the witness had included an improper element in arriving at his estimate of the value of his farm, they should have made a motion to exclude his testimony as to value.

Other objections are urged to the rulings of the court upon the admission of evidence and to the rulings of the court in reference to remarks of counsel for appellees in the argument to the jury, but we perceive no error in any of the rulings complained of.

Appellants also assign for error that the compensation allowed is excessive, but as the cause must be reversed for a new trial we will not consider the point raised that the verdict was not warranted by the evidence.

For the errors indicated in the giving of instructions Nos. 5, 8 and 9 the judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*