(No. 20873.—

The Department of Public Works and Buildings, Appellee, *vs.* William B. Watson, Appellant.

*Opinion filed November 16, 1931—Rehearing denied Dec. 10, 1931.*

B. A. Knight, for appellant.

Oscar E. Carlstrom, Attorney General, Charles H. Green, and Harry E. Wheat, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

This proceeding appears to have been begun by the filing of a petition by the appellee, the Department of Public Works and Buildings, in the county court of Stephenson county, against the appellant, William B. Watson, and others, for the condemnation of land for the right of way of Route 74 of the system of hard roads whose construction was authorized by the statute known as the Hundred Million Dollars Road Bond Issue act. This conclusion is

reached only by inference from the transcript, abstract and briefs filed, for the petition which we imagine must have been filed appears neither in the transcript nor the abstract, and no description of the property, verdict of the jury or judgment of the court appears in the abstract. The first thing in the abstract which might be supposed to give some information as to the character of the proceedings is called a cross-bill, but it was stricken from the files. This order is the subject of three of the six assignments of error, which are, that the court erred in sustaining the motion to strike, in refusing to strike out its order sustaining the motion to strike and to allow the appellant to offer proof that he was the owner of the land described in the cross-bill lying north of the lands sought to be taken, and in refusing to allow him an appeal from its refusal to strike out its order striking the cross-bill.

The cross-bill as shown in the abstract alleged, in substance, that Watson owned all of lot 7, a portion of which is sought to be condemned, and that the portion not taken would be damaged, therefore damages should be assessed for the portion not taken; that Watson owned land other than that described in the petition which in his opinion should be condemned in this same proceeding to avoid a second condemnation suit, therefore the highest and full value of such land should be determined and ordered paid to Watson, or, as stated in appellant's statement of facts, (page 2,) "appellant herein filed a cross-bill asking that certain lands owned by appellant but not described in the amended petition filed herein be included in the same condemnation case," and that the petitioner in April, 1929, entered upon the land adjoining on the north the land sought to be taken and cut down numerous trees thereon, consisting of upwards of 164 black walnut trees, together with more than 100 forest trees, and proceeded to build a concrete bridge across Pecatonica river resting largely upon the land of the appellant. The cross-bill further alleged that in

"the construction of said bridge it is planned by the cross-defendant to so change the bed of Pecatonica river that instead of flowing in its present channel it will flow entirely upon said lands of this cross-respondent, and as a result of such undertaking the said strip of land so lying between the said northerly red line in question in this case and the center line of Pecatonica river will all be taken away from this cross-respondent."

It is impossible to know to what land the cross-petition applies, as neither the original nor amended petition is shown by the record and no stipulation is shown as to "the said strip of land so lying between the said northerly red line in question in this case and the center line of Pecatonica river," except the following: "It is hereby stipulated and agreed by and between the parties hereto, by their respective counsel, as follows: That when tract 'C' or tract 'R' is referred to by counsel for petitioner or respondent, or the court, witnesses or the jury, the north boundary line of such tract shall be on a course to be fixed as follows: This course shall be fixed by a line betwen two points, the first of which points being in the west line of tract 'C' 1196 feet north of the south line of lot 6; the other point to fix this course shall be 1287 feet north of the south line of lot 6, and which point shall be in said east line of lot 6, which tracts 'C' and 'R' are referred to in the petition as specifically shown on blue-print, exhibit 'A,' attached to the petition." Since there is no description of lots "C" and "R," and the petition and the blue-print, exhibit "A," attached to it, are not in the record, we have no means of knowledge where the red line was or whether the cross-bill was properly stricken or not.

The other three assignments of error are, that the court refused to admit testimony of witnesses tending to show that the highest and best use for the lands involved was for use in constructing Route 74, and required the appellant to limit his argument to evidence showing the highest and best use of the land was for highway purposes generally,

and not for use in constructing Route 74. The compensation to be awarded a land owner for taking his land is not its value to the State or the corporation or municipality seeking to condemn it and is not measured by their need of the particular property for a special purpose or by the benefit which they will receive, but is the fair cash value of the land in the market. *Lambert* v. *Giffin,* 257 Ill. 152; *Village of Oak Park* v. *Hulbert,* 307 id. 270.

The record discloses no error in the proceedings, and the judgment will be affirmed.

*Judgment affirmed.*