City of Chicago, in Trust for Use of Schools v. Joseph B. McDonough, County Treasurer, Appellee. Chicago Title and Trust Company, Appellant.

Gen. No. 36,641.

Opinion filed February 5, 1934.

ENOCH J. PRICE, for appellant.

JOHN A. SWANSON, State's Attorney, for appellee; EDGAR B. ELDER, Assistant State's Attorney, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

February 8, 1929, the City of Chicago, in trust for the use of schools, filed its petition to condemn 48 lots for a school site. November 1, 1930, judgment of condemnation was entered on the verdict of a jury, the award being fixed at $49,530.25, and it was ordered that this be paid within 90 days to the county treasurer of Cook county for the benefit of the owner or owners of the property. January 12, 1931, the money was paid to the county treasurer and afterward was paid out by him except $2,323.94, which he retained, claiming he had a right to apply it to the payment of general taxes levied on the property condemned for the years 1929 and 1930, and that he also was entitled to retain $265.15 to pay the fees of the county clerk of Cook county for canceling certain tax sales certificates on the property, and also the sum of $5 for costs of recording quitclaim deeds executed and delivered by parties claiming some interest in the premises.

January 19, 1932, the defendant, Chicago Title and Trust Company as trustee, the owner of the premises

prior to the condemnation proceedings, by leave of court filed its petition praying that an order be entered requiring the county treasurer to turn over the $2,323.94 to it. The county treasurer answered the petition, there was a hearing before the court without a jury, and an order entered ordering the county treasurer to pay the balance in his hands to the Chicago Title and Trust Co. as trustee, after deducting the amount required to pay the taxes for 1929 and 1930, the $265.15 and the $5, from which order the Chicago Title and Trust Co., as trustee, prosecuted an appeal to the Supreme Court where, upon consideration, the cause was transferred to this court. *City of Chicago v. McDonough,* 351 Ill. 200.

The record discloses that the 48 lots in question were vacant and unoccupied, except three of them which were rented to the board of education, at a rental of $30 a month for the erection of three portable school buildings, and this rent was paid until the money was deposited with the county treasurer January 12, 1931. The Chicago Title and Trust Co., trustee, who will be referred to as the petitioner, contends that as owner of the lots condemned it was not liable for the taxes for 1929 and 1930, because these taxes became a lien on the property on April 1, 1929 and 1930, respectively, which was after the petition to condemn the property was filed, viz., February 8, 1929, and that in the condemnation proceeding the land is regarded as taken for public use at the time of filing the petition, and the compensation is measured by the value of the land at that time. *City of Chicago v. Collin,* 302 Ill. 270; *Public Service Co. of Northern Illinois v. Leatherbee,* 311 Ill. 505.

In the *Collin* case a petition was filed to condemn lots for school purposes and praying the court to cause to be ascertained the compensation to be paid for the property. After judgment was entered and the money

paid to the county treasurer, a controversy arose as to who was entitled to the money, and in discussing the nature of such a proceeding the court said (p. 274): "In this case the nature of the proceeding and the provisions of the act concerning eminent domain must be considered. In ordinary litigation the rights of parties are determined when the judgment is entered, but there are material differences in case of taking private property for public use by condemnation proceedings. It is a condition to the exercise of the right that the authorities seeking to appropriate the property shall first attempt to agree with the owner on the compensation, and it is only upon a failure to agree that a petition may be filed. If there had been such agreement in this case the owner of the property would be entitled to the full compensation. The lien of the State for taxes is paramount and superior to any other lien or any property right, . . . The City of Chicago and the owners of the property not being able to agree upon the amount of compensation to be paid, the City filed its petition to have the amount determined. In law the land was regarded as taken for the public use at that time, and the compensation was measured by the value of the land on the day the petition was filed. . . . A petitioner may dismiss the petition, and in case of such dismissal or failure to make payment must pay costs, expenses and attorney's fees, but if payment is made, as it was here, the money represents the value of the land when the petition was filed and liens or claims are transferred to the fund."

In the instant case the petition praying that the just compensation for the lots be ascertained was filed February 8, 1929. The value of the land was fixed as of that date and all liens that were against the lots at that time were transferred to the fund when paid to the county collector. It is conceded that all of such liens have been properly paid. But the question for

decision is whether the general taxes, which became a lien on the lots after the filing of the petition, should be borne by the owner of the lots. It is true that the right to enter and take possession of the lots is conditioned upon the payment of the compensation awarded. On failure to pay, the proceeding is, under law, considered as abandoned. *Forest Preserve Dist. v. Kean,* 303 Ill. 293; *City of Winchester v. Ring,* 315 Ill. 358. In this proceeding the title which vests in the City for the use of schools is the title as it existed when the petition, to have the compensation fixed for the lots, was filed. And the compensation awarded is to be paid to those persons who had an interest in the premises as of the same date.

In *Sherwin v. Wiggelsworth,* 129 Mass. 64, which was a proceeding brought by the United States to condemn property for a post office site in Boston, it was held that while the title to the property did not vest in the United States until payment of the award, yet the title taken was that which existed when the petition for condemnation of the land was filed, and that the owner of the land was not chargeable with taxes assessed against it while the proceedings were pending. In that case a petition was filed April 16, 1873, on behalf of the United States for the condemnation of land for a post office site. Final judgment was not rendered until August 16, 1876, when the award was paid. Taxes were assessed on this land by the City of Boston May 1, 1875, and May 1, 1876, and the question arose whether the owner of the land at the time the petition was filed should pay the taxes for these two years, and it was held that he was not liable. The court there, speaking by Gray, C. J., said: "The title in land taken for the post office in Boston does not vest in the United States until the assessment and payment of the damages thereby occasioned to the owners of the land. But the title which is purchased by and vests

in the United States is the title as it existed when the petition for the valuation of the land was filed. . . . The time necessary to complete the judicial proceedings does not change the subject or the measure of compensation, or the parties who are entitled to it. In theory of law, although the compensation cannot be paid until it has been estimated, nor the title pass until the compensation is paid, yet both the compensation paid and the title acquired have relation back to the inception of the proceedings for the condemnation of the land to the public use. It has already been adjudged that the measure of damages to be awarded to the owners is the value of the land at that date, and interest thereon. . . . And it would be most unjust to charge the owners of the land with . . . taxes imposed after it has been designated and set apart for the public use, and while they cannot enjoy, nor improve it, nor obtain compensation for any increase in its value.''

In the instant case the petition having been filed February 8, 1929, the compensation for the lots having been fixed as of that date, the parties entitled to the compensation being those who were interested in it at that time, and the liens on the property on that date having been transferred to the funds when paid to the county treasurer, we think any liens which attached to the land after the filing of the petition must be borne by the City of Chicago for the use of schools. Whether the City will be required to pay the taxes in question, or whether the property will be considered as exempt by virtue of section 3 of article 9 of the Constitution of 1870, and section 2, ch. 120 of Cahill's Revised Statutes, obviously is not before us.

But counsel for the county treasurer in the instant case contends that the question before us has been decided by our Supreme Court in *People v. Price*, 282 Ill. 519. While some language is used in the opinion

that tends to sustain the contention, yet we are of the opinion that the question before us was not decided. In that case an appeal was taken from a judgment and order of sale for failure to pay taxes on certain lots located in Chicago, which had a depth of 71 feet, 68 feet of which were taken in eminent domain proceedings to widen 12th street. The taxes were levied on the whole of the lots after the petition in the condemnation proceeding was filed. Part of the cost of the improvement was to be paid by special assessment and the proceedings were under the Special Assessment Act of 1897. The taxes were levied against the entire lots, 68 feet of which it will be noted were to be taken for the widening of the street. It was held that the law required taxes to be assessed against an entire lot and not part of it, and that the remedy to cure this wrong was in the legislative branch and not in the courts. All of the lots were ordered sold, including the 68 feet, and the judgment was affirmed. The court there said (p. 522): ''The judgment of the county court will be affirmed as to these taxes on this property, including that taken by the eminent domain proceedings.'' In that case Price was the owner of the property at the time of the eminent domain proceeding and was willing to pay the proper proportion of the taxes assessed, but objected to paying it on that part of the property condemned. No contention was there made that he was not liable for that portion of the taxes levied against the part of the lots which was not taken by condemnation. The court there said (p. 521): ''The tax levy complained of was against all the property, including that condemned as well as the strip not condemned. Appellants assert that they are willing to pay the proper proportion of the taxes assessed on the property not taken but should not be required to pay on the property taken. . . .

"Appellants contend that the petition for condemnation having been filed long before this tax was levied, which proceeding destroyed, in a large measure, the rental value of the property, a tax upon the basis of the original frontage or amount of property should not be collected; that the value assessed for taking property is always required to relate back to the time of filing the petition. . . . They argue that even though the owner is not deprived of the legal title until the money is actually paid, he should not, in equity, be required to pay taxes on the property under circumstances such as here attempted to be shown when the rental value of the property has been greatly injured by the filing of the condemnation proceedings. The rule is that the title to property condemned does not vest until damages awarded by the judgment are paid." The court then said that the "tax lien is not divested by condemnation proceedings." What the court there actually decided was that the lien of the taxes which attached to the property after the petition for condemnation was filed was not divested by the condemnation proceeding, which is obviously true; but the court did not hold that such taxes should be paid out of the moneys awarded in the condemnation proceeding. That question was not decided because it was in no way involved.

In the instant case we hold that the general taxes for 1929 and 1930, which became a lien after the petition for condemnation was filed, are not payable out of the compensation awarded.

It is also the law that the filing of a petition to condemn property for public use is in one sense the taking of the property at the time of the filing of the petition, but possession of the property cannot be taken until the compensation is ascertained and paid. *South Park Com'rs v. Dunlevy*, 91 Ill. 49; *Sanitary Dist. v. Chapin*, 226 Ill. 499; *City of Winchester v. Ring*, 315

Ill. 358. In the *Dunlevy* case the court held that in a proceeding to condemn land for public use, it would be a trespass to take possession of the property before the damages were ascertained and paid; that the owner has the right to use the land until the damages are paid and therefore is not entitled to interest on the value of the land from the commencement of the suit to the trial. In the instant case the compensation was, under the law, fixed as of the date of the filing of the petition. No interest was allowable on the amount of the award, but the owner of the land was entitled to the use of it until the judgment was paid. · In these circumstances he has a right to the rents collected for the three lots· above mentioned.

We are also of opinion that the county collector was not authorized to retain the $265.15, the cost for canceling the tax sales certificates, nor the $5 for the recording of quitclaim deeds.

The judgment of condemnation gave good title to the City for the use of schools and it was unnecessary, when all liens including taxes were paid, to have the tax sales certificates canceled by the county clerk; the owner of the property should not be put to the expense of paying for the cancellation of these certificates. Nor do we think a quitclaim to the property from the owner was required to perfect the City's title to the land. But if such deed was obtained from the owner, we think the cost should be borne by the city and not by him.

The order of the circuit court of Cook county is reversed and the matter remanded with directions to the county treasurer to pay the entire amount in his hands to the owner of the property, the Chicago Title and Trust Company, trustee.

*Reversed and remanded with directions.*

MATCHETT, P. J., and McSURELY, J., concur.