People of the State of Illinos ex rel. Maria Carofiglio et al., Appellees, v. Joseph L. Gill, Appellant.

Gen. No. 39,295.

Heard in the second division of this court for the first district at the December term, 1936. Opinion filed June 29, 1937. Rehearing denied July 9, 1937.

THOMAS J. COURTNEY, State's Attorney, for appellant; HAYDEN N. BELL, JACOB SHAMBERG, WILLIAM P. KEARNEY and GERALD E. HORNIDGE, Assistant State's Attorneys, of counsel.

MALONEY & WOOSTER, of Chicago, for appellees.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This is an appeal from a judgment awarding a writ of mandamus against the county treasurer of Cook

county, requiring him to pay to plaintiffs the sum of $5,719.56, which was a balance withheld by the treasurer out of moneys deposited with him by the Forest Preserve District to pay a judgment entered in a condemnation cause.

Plaintiffs are the heirs of Vincent Carofiglio and the administrator of his estate. The petition alleges that plaintiffs were entitled to receive an award given in a condemnation proceeding entitled *"Forest Preserve District of Cook County v. Carofiglio,"* in the superior court of Cook county; that the property involved (owned by Carofiglio in his lifetime) was a subdivided tract of vacant residential property west of the village of Glencoe, in Cook county; that in February, 1929, Carofiglio platted and subdivided the tract for the purpose of placing it upon the market for sale; that on April 19, 1929, an ordinance was passed by the Forest Preserve District of Cook county selecting the tract as a forest preserve site; that to apprise the public that the property was to be taken for forest preserve purposes and was no longer available for residential use, the District published and recorded the ordinance, which was passed to prevent the sale of the property by the owners and to cloud the title to the same; that no steps were taken by the District after the passage of the ordinance until November 19, 1931, when the petition for condemnation was filed; that the proceeding was not brought to trial until October, 1935; that during the latter part of 1933, or during January or February of 1934, the District illegally and wrongfully entered upon the property, by their agents, and dug a ditch through it, which has since been used by the District to provide drainage for property north of the property of petitioners; that the ditch created a barrier to the use of the property; that in the condemnation proceeding a judgment was rendered in favor of plaintiffs for $21,005, on October 11, 1935; that there-

after the District deposited that sum with appellant and the latter paid to plaintiffs $13,027.40 of the same but refused to pay the balance, on the ground that it was withheld for the payment of taxes for the years 1930, 1931, 1932, 1933, 1934 and 1935; that plaintiffs then directed appellant to pay, out of the moneys held by him, the taxes levied for 1930 and eleven-twelfths of the taxes for 1931; that appellant, in obedience to the direction, paid taxes in the amount of $2,153.49, and plaintiffs received a paid tax bill therefor; that appellant still withholds from plaintiffs $5,824.04; "that upon the filing of the said order of condemnation of November 19th, 1931 [petition for condemnation], the . . . District condemned the said land, and that the . . . District had long prior to the said date, appropriated the said land to their own use by the passage of the said ordinance herein referred to, and that the . . . District by the filing of the condemnation suit became liable for taxes levied against the property on and after the filing of the petition of condemnation, and that it became and was the duty of the said Joseph L. Gill to pay to the petitioners all of the said funds." The petitioners prayed for a writ of mandamus directing appellant to pay to them the $5,824.04. Attached to the petition as an exhibit is an ordinance passed by the District on April 19, 1929, which states that it is desirable and necessary to acquire plaintiffs' property for forest preserve purposes, and authorizes the chief of the real estate department of the District to negotiate with the owners of the property for the purchase by the District of the property at a sum not to exceed $1,200 per acre. The ordinance provides that if the negotiations for purchase fail, then the attorney of the District is instructed to institute proceedings to acquire the property under the eminent domain laws of the State. The answer of appellant admits that plaintiffs are the persons entitled to the award in the condemnation pro-

ceedings, but avers that the award is subject to certain limitations; denies that the publication of the ordinance affected the property in any manner; denies that the District failed to prosecute the condemnation proceedings diligently; denies that the District at any time illegally and wrongfully took physical possession of the property in any manner; denies that the District owned the property prior to the condemnation judgment; denies that the filing of the petition to condemn the premises in any manner affected plaintiffs' title to the same or transferred such title to the District; denies that the District, by the filing of the condemnation proceedings, became liable for all general taxes due and outstanding against the premises; denies that the District appropriated the land to its own use by the passage of the ordinance; denies that it was his duty to pay to plaintiffs the amount withheld; denies that he was under any duty to pay any sum or sums to plaintiffs so long as there remained unpaid any general taxes assessed and levied against the premises for the period prior to the date of deposit of the judgment award with him, and avers that it was his duty as county treasurer and as *ex officio* county collector to deduct said sum on account of the delinquent taxes.

In entering judgment for plaintiffs the trial court excluded the sum of $104.48, which represented the amount of the taxes for the month of December, 1931.

The sole question to determine is, Are the general taxes that became a lien against the property, after the filing of the condemnation petition but before the entry of the condemnation judgment, to be borne by the owners of the property? The trial court answered the question in the negative, basing his ruling upon *City of Chicago v. McDonough*, 273 Ill. App. 392, recently decided by the first division of this court, wherein it was held that "any liens which attached to the land after the filing of the petition must be borne by the City of Chicago for the use of schools"; that "whether the

City will be required to pay the taxes in question, or whether the property will be considered as exempt by virtue of section 3 of article 9 of the Constitution of 1870, and section 2, ch. 120 of Cahill's Revised Statutes, obviously is not before us"; that "the general taxes for 1929 and 1930, which became a lien after the petition for condemnation was filed, are not payable out of the compensation awarded."

The city of Chicago made no effort to have the *McDonough* case reviewed by the Supreme Court. Appellant concedes that it sustains the ruling of the trial court, but strenuously contends that the decision is contrary to the ruling of the Supreme Court in *People v. Price,* 282 Ill. 519. In the *McDonough* case the city contended that the *Price* case decided the question before the Appellate Court, but Mr. Justice O'Connor, who wrote the opinion in the *McDonough* case, held that the question before them "was in no way involved" in the *Price* case. We are forced to disagree with that holding. The *Price* case involved a condemnation proceeding to widen Twelfth street, commenced April 7, 1911, wherein the city took a part of the property in question. The total amount awarded the owners, $236,000, was paid by the city on May 4, 1917, an order for possession was entered, and the city took possession of the property. The owners paid the entire taxes for the years 1910 to 1915, inclusive, but the 1916 taxes on the entire strip, amounting to $2,342.40 and interest, were not paid, and the county collector applied for judgment and an order for sale for failure to pay taxes, and the county court entered such a judgment against the entire property for the full amount of said taxes and interest. The property owners appealed from that judgment.

To quote from the opinion of the Supreme Court (pp. 521–2):

"The tax levy complained of was against all the property, including that condemned as well as the strip

not condemned. Appellants assert that they are willing to pay the proper proportion of the taxes assessed on the property not taken but should not be required to pay on the property taken. The judgment of the county court as to the unpaid taxes was entered against all of the property, both the strip not taken and the land that was taken by the city, and this seems to be in accordance with the holding of this court that taxes upon real estate are a lien or charge upon the land itself on the first day of May each year they are levied. *Cooper v. Corbin,* 105 Ill. 224; *Wabash Eastern Railway Co. v. East Lake Fork Drainage District,* 134 id. 384.

"Appellants contend that the petition for condemnation having been filed long before this tax was levied, which proceeding destroyed, in a large measure, the rental value of the property, a tax upon the basis of the original frontage or amount of property should not be collected; that the value assessed for taking property is always required to relate back to the time of filing the petition. (*Lambert v. Giffin,* 257 Ill. 152; *East Side Levee District v. East St. Louis and Carondelet Railway,* 279 id. 123.) They argue that even though the owner is not deprived of the legal title until the money is actually paid, he should not, in equity, be required to pay taxes on the property under circumstances such as here attempted to be shown when the rental value of the property has been greatly injured by the filing of the condemnation proceedings. The rule is, that the title to property condemned does not vest until damages awarded by the judgment are paid. (*Chandler v. Morey,* 195 Ill. 596; *Chicago and Northwestern Railway Co. v. City of Chicago,* 148 id. 141.) This rule is undoubtedly based on the fact that the party condemning need not take the property, even after judgment, unless he desires to do so. (2 Lewis on Eminent Domain, 3d ed., sec. 955.) The rights of the various par-

ties, under such circumstances, are controlled by the statutes of the different States. In this State, by an amendment to the Eminent Domain act in 1897, it was provided that the petitioner shall pay the defendant's costs, expenses and reasonable attorney's fees if he fails to pay full compensation within the time fixed by the order of court condemning the property. (*Chicago and Western Indiana Railroad Co. v. Guthrie,* 192 Ill. 579.) This entire property, under the statute of this State as construed in *Cooper v. Corbin, supra,* was liable to taxes for the year 1916 on May 1, 1916, and subject to the lien of said taxes from that date on, and the usual rule is that this tax lien is not divested by condemnation proceedings. (2 Lewis on Eminent Domain, 3d ed., sec. 524.) To require appellants to pay taxes on the entire tract for the year 1916, under the circumstances set out in this record, may not be absolutely equitable, but under the statutes and authorities cited, as the title remained in appellants until after these taxes became a lien on the entire tract, we are compelled to hold that the judgment of the county court was correct. If the ruling should be otherwise in cases of this kind, the remedy lies with the legislative branch of the government and not with the courts.

"The judgment of the county court will be affirmed as to these taxes on this property, including that taken by the eminent domain proceedings."

The *Price* case, in our judgment, clearly binds us to hold that in the instant proceeding the general taxes that became a lien against the property after the filing of the condemnation petition but before the entry of the condemnation judgment, must be borne by the owners of the property. The ruling in the *Price* case has never been reversed or qualified, and in *People v. Atwater,* 362 Ill. 546, it is cited with approval.

Plaintiffs cite, in support of the ruling in the *McDonough* case, *In re Mayor, etc., of City of New York,* 58 N.

Y. S. 58, and *Sherwin v. Wigglesworth,* 129 Mass. 64. In view of the ruling in the *Price* case it is unnecessary for us to consider decisions of sister States, but we may say that in New York, by statute, the actual appropriation of property occurs at a time prior to the ascertainment of the amount of damages to be paid; and in the Massachusetts case, while by the provisions of the act of Congress and the statute of Massachusetts the title in the land taken did not vest in the United States until the assessment and payment of the damages, it appears from the opinion that upon the filing of the condemnation petition the land is designated and set apart for public use and the owner cannot enjoy it nor improve it. No such consequences follow the commencement of condemnation proceedings in this State. To quote from *People v. Atwater, supra* (p. 552):

"We said in *Mills v. Forest Preserve District,* 345 Ill. 503, 509: 'The enactment of the ordinance directing the purchase or condemnation of the land was not a taking of the land in any sense. It conferred no right in the land and did not interfere in any way with its use, control or disposition. Its only effect was an indication of an intention to negotiate for the purchase of the land. It may be an embarrassment to a land owner that his land is subject to be taken for a public use — a highway, a street improvement, a public building — but it is one of the conditions on which an owner of land holds it in this State. Even the filing of a petition for condemnation gives no more interest in land than negotiations for its purchase. Both are methods of procuring title and neither gives any interest in the land until completed. *City of Chicago v. Ridge Park District,* 317 Ill. 123; *Van Winkle v. Loehde,* 336 id. 327; *Forest Preserve District v. Kean,* 303 id. 293.' " Indeed, plaintiffs concede that in this State "property condemned cannot be devoted to public use until it has legally been taken possession of and paid for."

Plaintiffs argue that because the District, prior to the condemnation judgment, dug a ditch across their property and used it for drainage purposes, the judgment should be affirmed. Under the law of this State, such an action on the part of the District would amount to a trespass, and plaintiffs would have a right to seek damages, in a proper action; but they cannot defeat a judgment in the instant suit by interposing the claim of trespass. Plaintiffs also contend that the judgment should be affirmed for the reason that the District delayed the trial and condemnation proceedings for a period of four years. While such a contention cannot be raised to support the instant judgment we note that in a very recent decision of the Supreme Court (*Roach v. Village of Winnetka,* Docket No. 24027, opinion filed June 11, 1937) the court held that "under section 13 of article 2 of the constitution of 1870 a property owner has a right of action to recover damages occasioned by wrongful delay in the prosecution of condemnation proceedings."

The judgment of the superior court of Cook county is reversed, and the cause is remanded with directions to the trial court to dismiss the cause.

*Judgment reversed, and cause remanded with directions to trial court to dismiss cause.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.